## E. T. MERRIMAN ET AL. v. P. E. BLALACK ET AL.

### Decided October 27, 1909.

**1.—Finding of Fact—Statute.**

A finding as a conclusion of fact by a trial judge that a certain deed conveyed to the grantee all the right, title and interest of the grantor in a certain league of land, including the land in controversy, was not in violation of the statute which requires conclusions of fact and law to be separate.

**2.—Limitation—Title—Deed or Option.**

An instrument purporting to be a deed, considered and held to be such a conveyance of the entire league of land therein described (and not merely a conveyance of an option to purchase a part of said league) as would support the five years statute of limitation to the entire league, and also to be such memorandum of title as would support the ten years statute of limitation to said league.

**3.—Same—Improvements on Land—Practice.**

Where the trial court clearly finds the extent and character of the improvements made by a defendant on land claimed by him under the statute of limitation, it is sufficient without specifying whereabouts on said land the improvements were situated. Especially is this so in the absence of a request for more definite findings.

**4.—Deed—Undivided Interest—Sufficient Description.**

A deed which described the land conveyed as an undivided number of acres (giving the number) out of a larger grant which is described and clearly identified, and which also described the interest conveyed as an undivided one-eighth interest of the larger grant, sufficiently described the land conveyed.

**5.—Limitation—Defective Registration of Deed.**

A deed of a married woman to her separate property is not duly recorded within the meaning of the statute of limitation when an essential part of the certificate of acknowledgment is omitted from the record.

**6.—Same—Deeds to Undivided Interests.**

Deeds by different heirs conveying their respective interests in the same tract of land will support the five years statute of limitation when the sum of the interests conveyed constitute the whole, when the deeds are duly recorded and other requirements of the statute are complied with.

**7.—Same—Quitclaim Deed.**

Under the decisions in this State a mere quitclaim deed will support pleas of limitation of both five and ten years.

**8.—Evidence—Payment of Taxes.**

The testimony of a witness that one in possession of land paid taxes thereon, and paid said taxes for himself, is not subject to the objection that said testimony was a conclusion of the witness. The presumption would be that one paying taxes on land paid them for himself and not another.

**9.—Same—Claim of Ownership.**

The testimony of a witness that neither he nor any of his coheirs recognized any other person as having any right in the land in controversy, is not a conclusion of the witness.

**10.—Practice—Admission of Improper Evidence.**

Where a case is tried before the judge without a jury and the judgment is supported by unobjectionable and practically undisputed evidence, the admission of improper testimony is not cause for reversal.

Appeal from the District Court of Hidalgo County. Tried below before Hon. W. B. Hopkins.

*D. B. Chapin, Don A. Bliss* and *R. J. Swearingen,* for appellants. —The deed from Brewster to Josiah W. Turner, dated July 1, 1879, and the deed from Elizabeth Merriman to the said Josiah W. Turner, dated March 29, 1878, were, by the terms of said deed from Josiah Turner to Julio Guzman, made a part thereof; and from all these instruments taken together it is manifest that it was not intended by the said Turner to convey to the said Guzman any more land that the one-fourth of a league that had been conveyed to him by the said Elizabeth Merriman, and also whatever right, title and interest he might have acquired by reason of the execution and delivery to him of the quitclaim deed executed by Brewster, and was not intended to in any way affect the three-fourths of the league in controversy in this suit, except to assign to the said Guzman the option to purchase said three-fourths of the league that had been given to him, the said Turner, by the said Elizabeth Merriman in her deed conveying to the said Turner the said one-fourth of a league. Revised Statutes, art. 1333; Cravens v. White, 73 Texas, 579; Baylor v. Hopf, 81 Texas, 642; Hancock v. Butler, 21 Texas, 806; 13 Cyc., p. 615, and authorities cited in note 58.

That part of the tenth conclusion of fact made by the trial court wherein the court finds that Julio Guzman built corrals and opened up fields without stating where said corrals were, or where said fields were on the land, and without stating or identifying in any manner the portion of the land enclosed by said corrals or enclosed in said fields, or the quantity thereof, is insufficient to base title upon by virtue of the statutes of limitations. Sparks v. Hall, 67 S. W., 916; Simpson v. Johnson, 44 S. W., 1076; Veramendi v. Hutchins, 56 Texas, 414.

If a material and essential part of the certificate of the acknowledgment of the execution of a deed by a married woman purporting to convey her separate land is omitted from the record of the deed, then such deed is not duly recorded, for the certificate of the acknowledgment of the execution of a deed by a married woman purporting to convey her separate property is an essential part of the deed. Dolores Guzman de Longoria was one of the daughters and heirs of Julio Guzman, Sr. It was admitted by appellees that in the record of said deed in book "J," on pages 284 to 287 of the deed records, the following words, which appear in the certificate of acknowledgment of the deed, were omitted, to wit: "and having the

same by me fully explained to her, she, the said Dolores Guzman de Longoria." Taylor v. Harrison, 47 Texas, 454; Dean v. Gibson, 48 S. W., 57.

The deeds executed by the heirs of Julio Guzman, Sr., to appellee Blalack, being deeds purporting to convey to the said Blalack simply undivided interests in two tracts of land without identifying · or describing the particular parts of the land conveyed, and one of them, to wit: the deed of Dolores Guzman de Longoria, joined by her husband, not being duly recorded, were not a sufficient basis to support a claim of title to the land in controversy under the five years statute of limitations. Noble v. Hill, 27 S. W., 756; Kelly v. Medlin, 26 Texas, 55; Acklin v. Paschal; 48 Texas, 147; Williams v. Thomas, 44 S. W., 1073; Wofford v. McKinna, 23 Texas, 36; Kilpatrick v. Sisneros, 23 Texas, 113; Brokel v. McKechnie, 69 Texas, 32; McDonough v. Jefferson County, 79 Texas, 535; Bowles v. Brice, 66 Texas, 729.

The following questions propounded by appellees, through an interpreter, to the witness, Julio Guzman, Jr., while said witness was on the stand testifying in behalf of appellees, to wit: "Ask him if he (Julio Guzman, Sr.,) paid taxes for the Merriman people, or anyone else?" "Ask him who he paid taxes for?" and "Ask him who he paid them for, whether for himself or any other person?" each and all called for conclusions of the witness without stating the facts upon which such conclusions were based. Arndt v. Boyd, 48 S. W., 771; Gabel v. Weisensee, 49 Texas, 131; Houston & T. C. Ry. Co. v. Smith, 52 Texas, 178; Clardy v. Callicoate, 24 Texas, 170.

This question propounded by appellee to the witness, Julio Guzman, Jr., while said witness was on the stand testifying in behalf of appellees, to wit: "Ask him who held possession of the land after his father's death?" called for an opinion and conclusion of the witness instead of a statement of the facts and was therefore improper. Brown v. Mitchell, 88 Texas, 367; Gilbert v. Odum, 69 Texas, 670; Bugbee Land & Cattle Co. v. Brents, 31 S. W., 695; Randall v. Gill, 77 Texas, 351; Gulf, C. & S. F. Ry. Co. v. Shearer, 21 S. W., 133; Western Union Tel. Co. v. Hearne, 26 S. W., 478; Scott v. Witt, 41 S. W., 401.

(Nineteenth assignment.)—The following question: "Ask him whether or not all during that time if any other person claimed this land, or exercised acts of ownership over it?" and the following question: "Ask him whether or not since 1882 up to the time they sold the land to Blalack, whether or not any person except his father and the children were ever in possession of the land, asserting claim to it, or exercised acts of ownership to it?" propounded by appellee to the witness, Julio Guzman, Jr., while said witness was on the stand testifying in behalf of appellees, called for conclusions of law as well as of fact, instead of calling for a statement of the facts, and were therefore improper.

(Twenty-first assignment.)—The question: "Do you know how much land he (Julio Guzman, Sr.,) owned or claimed?" propounded by appellees to the witness, John Closner, while said witness was

on the stand testifying in behalf of appellees, called for a conclusion and opinion of the witness instead of a statement of the facts upon which such conclusion was based, and was, therefore, improper.

(Twenty-second assignment.)—The question: "Do you know whether or not that line (the line between the Forto tract and the lower Santa Ana league) has been recognized by the owners of the respective tracts as the division line between them?" and the question: "Do you know whether it (said line) has been recognized by the owners as the division line between them, on both sides of it or not?" propounded by appellees to the witness, William Brewster, while said witness was on the stand testifying in behalf of appellees, each called for a conclusion and opinion of the witness instead of for a statement of the facts, and was, therefore, improper.

(Twenty-ninth assignment.)—The testimony of the witness Lon C. Hill that he knew whom the different pieces of land and different ranches belonged to, and that the people there knew who owned the lands in the country where the land in controversy is situated, was a statement of an opinion and conclusion of the witness and was not admissible against appellants over their objection.

(Thirtieth assignment.)—One of the vital issues in the case being as to whether the possession of Julio Guzman, Sr., and those claiming under him, was of so unequivocal and notorious and adverse character as to affect appellants with notice of such adverse claim, the objections of appellants to the following question: "State whether or not it was a matter of notoriety in the country as to who owned these lands?" propounded by appellees to their witness Lon C. Hill, that said question called for a conclusion of law and of fact and an opinion of the witness, should have been sustained by the court.

*Beasley & Beasley* and *Dougherty & Dougherty,* for appellees.— The deed from Delores Longoria and husband to Blalack, being in fact properly acknowledged, and all of its parts being recorded save the words in the certificate of acknowledgment, "and having the same by me fully explained to her, she, the said Dolores Guzman de Longoria," was a deed duly registered within the meaning of the five years statute of limitation. Woodson v. Allen, 54 Texas, 551; Ballard v. Perry, 28 Texas, 348; Witt v. Harlan, 66 Texas, 660; Coffey v. Hendricks, 66 Texas, 677; Hines v. Thorn, 57 Texas, 104; Hart v. Patterson, 43 S. W., 545.

The deed from Turner to Guzman purported to convey the entire eastern league of the Santa Ana grant, which included the eastern three-fourths of said league, the land in controversy, and was a "deed" within the meaning of the five years statute of limitation. Tax deed not void on its face, basis for limitation under five years statute: Wofford v. McKinna, 23 Texas, 43; Seemuller v. Thornton, 77 Texas, 156; Flanagan v. Boggess, 46 Texas, 330; Fowler v. Simpson, 79 Texas, 611; Schleicher v. Gatlin, 85 Texas, 270, and dissenting opinion of C. J. Stayton, page 276; Lamberida v. Barnum, 90 S. W., 698; Gillaspie v. Murray, 66 S. W., 252; Kobs v. New

York & T. Land Co., 63 S. W., 1087; Villareal v. McLaughlin, 62 S. W., 98; Smith v. Kenney, 54 S. W., 801; Taylor v. Brymer, 42 S. W., 999.

Deed by married woman (such fact not appearing on face of deed) not privily acknowledged also sufficient. Fry v. Baker, 59 Texas, 404.

Deed by administrator, void by reason of judge's disqualification, sufficient. Halbert v. Martin, 30 S. W., 388.

Deed by husband of land owned by wife (such fact not appearing on face thereof) sufficient. McDonough v. Jefferson County, 79 Texas, 535.

Immaterial whether grantor had title or not if the deed purports to convey the land it is sufficient. Seemuller v. Thornton, 77 Texas, 156; Schleicher v. Gatlin, 85 Texas, 270; Chamberlain v. Showalter, 23 S. W., 1017; Midkiff v. Stephens, 29 S. W., 54.

A purely quitclaim deed sufficient. McDonough v. Jefferson County, 79 Texas, 535; Parker v. Newberry, 83 Texas, 430; Harris v. Bryson, 80 S. W., 105.

Any deed not absolutely void on its face sufficient. Schleicher v. Gatlin, 85 Texas, 270; City of El Paso v. Ft. Dearborn, 74 S. W., 22; Harris v. Bryson, 80 S. W., 105.

Deed conveying grantor's "right, title and interest" purports to convey the land. Authorities, supra, and Macmanus v. Orkney, 91 Texas, 27.

The deed from Turner to Guzman is not a quitclaim deed. Abernathy v. Stone, 81 Texas, 433; Garrett v. Christopher, 74 Texas, 453; Laughlin v. Tips, 28 S. W., 551; Lewis v. Terrell, 36 S. W., 754.

The language of a deed is the language of the grantor, and if there be doubt as to the construction such should be resolved against him. Cundy v. Stafford, 80 Texas, 120; Cartwright v. Trueblood, 90 Texas, 535.

The premises in a deed being clear and explicit should be given effect to rather than a provision following in conflict therewith in less clear language, especially where the latter would limit the former. Cartwright v. Trueblood, 90 Texas, 535; 9 Am. & Eng. Ency. Law, p. 139, and authorities cited.

Acts of parties showing their construction of deed may be looked to in order to ascertain intention. Linney v. Wood, 66 Texas, 22; Heidenheimer v. Cleveland, 17 S. W., 528.

The deed from Amando Guzman, one of the heirs of Julio Guzman, to P. E. Blalack, purported on its face to convey the undivided one-eighth of a tract of 6244 acres (fully and particularly described), comprised of the eastern league of the Santa Ana grant and the western one-half league of the Gato grant, and contained the recital: "The lands now hereby conveyed being all of the land inherited by me, said Amando Guzman, in both the 'Gato' and 'Santa Ana' grants, or either of them, from my deceased father, Julio Guzman, Sr., and his wife, my mother, Estefana Guzman, or either of them, as one of their eight children and heirs," and thereby sufficiently identified the particular undivided interest conveyed, and was a deed within the meaning of the statute and sufficient as a basis for limitation under the five years statute, to the extent of the undivided one-

eighth part of said tract of land; and the deeds from the other heirs of Guzman to Blalack, being similar in form, were deeds within the meaning of the statute, and sufficient as a basis for limitation to the extent of the aggregate interests conveyed or purported to be conveyed by them. Acklin v. Paschal, 48 Texas, 147; Grigsby v. Cole, 25 S. W., 680; De Leon v. McMurray, 23 S. W., 1038.

A deed even though void on its face is sufficient as basis for ten years statute of limitation. Wofford v. McKinna, 23 Texas, 36; Schleicher v. Gatlin, 85 Texas, 274; 27 Texas, 365; 13 Texas, 109; 58 Texas, 572; 54 S. W., 924.

REESE, ASSOCIATE JUSTICE.—This is a suit in trespass to try title by Titus E. Merriman and others against R. E. Blalack and G. L. Hawkins, to recover an undivided eight-ninths interest in a tract of land described as the eastern or lower three-fourths of the eastern or lower league of a certain two league grant to Benigno Leal, known as the "Santa Ana" on the Rio Grande River in Hidalgo County.

Defendants pleaded general demurrer, general denial and "not guilty" and, under appropriate allegations, the statutes of limitation of five and ten years as to the whole tract, and also the statute of limitation of two years as to a portion of the land by them under actual enclosure. They deny specially the title of plaintiffs, assert title in themselves, and pray for removal of cloud and that they be quieted in their title.

To this answer plaintiffs filed a supplemental petition by way of reply, denying defendants' title and denying the defendants' possession was adverse or that they had any notice thereof. The various deeds under which defendants are alleged to claim title are set out and it is alleged that they do not afford a basis for their claim of title by limitation of five or ten years, but that defendants' possession, insofar as it extended to the interest claimed by plaintiffs, was in subordination to and not adverse to their title.

A trial by the court without a jury resulted in a judgment for defendants, from which plaintiffs prosecute this appeal.

The following are the material facts, as gathered from the court's conclusion of fact and from the evidence:

1. The land in controversy is the lower three-fourths of the lower or easternmost of the two leagues granted by the Mexican Government to Benigno Leal in 1834, known as Santa Ana. The grant was confirmed and patent issued to said Leal.

2. The easternmost or lower league was conveyed by Leal and wife to Eli T. Merriman in 1852, and that portion of the league herein involved conveyed by Eli T. Merriman to Henry E. Merriman October 12, 1860. Deeds duly recorded.

3. Henry E. Merriman died intestate in 1861, leaving surviving as his sole heirs his sister, Caroline, and two brothers, the said Eli T. and Titus E., and the plaintiffs are the descendants and sole heirs of said sister and brothers.

4. By deed dated October 15, 1860, Eli T. Merriman conveyed by metes and bounds the upper or western one-fourth of the eastern-

most or lower league of Santa Ana to John Fusselman, and by deed dated May 3, 1861, Fusselman conveyed the same land to Elizabeth Merriman, both deeds duly acknowledged and recorded.

5. Said Elizabeth Merriman by deed dated March 29, 1878, duly acknowledged and recorded, conveyed said one-fourth league by metes and bounds to Josiah W. Turner. This deed contained this further contract or agreement, "And for a good and valid consideration from the said Turner received, I hereby agree that in the event the tract now herein conveyed shall be discovered to constitute one-fourth of an entire league owned by me, then the said Josiah W. Turner shall have the preference as purchaser of same at the rate of six hundred dollars for the whole league, or a balance of $350 to be paid to me or my heirs or assigns."

6. On May 7, 1878, the tax collector of Hidalgo County executed to W. T. J. G. Brewster a deed duly recorded on the same day, which said deed conveys to Brewster, purchaser at tax sale for taxes due by Elizabeth Merriman for the year 1877, "all the right, title, interest and estate which the said Elizabeth Merriman had at the time which the assessment before mentioned was made" to the league of land described in tax deed as follows: "4428 acres of land lying in the county of Hidalgo and being one of two leagues originally granted to Benigno Leal by the King of Spain and confirmed by the Legislature of the State of Texas and known as 'Santa Ana.' Bounded as follows: On the east by a tract of land owned by Christobal Leal, on the west by land owned by C. B. Combe, on the north by land to me unknown, on the south by the Rio Grande River, having a front of 900 varas and a depth from north to south of five Spanish leagues, being about thirteen miles below the town of Hidalgo."

7. By quitclaim deed dated July 1, 1879, said Brewster conveyed to said Josiah W. Turner the land conveyed to him. This deed was duly recorded July 1, 1879.

8. Said Josiah W. Turner by deed dated April 24, 1882, conveyed to Julio Guzman "his right, title and interest in the easternmost league of the Santa Ana grant," describing the same by metes and bounds, embracing the whole league and including the land in controversy. The deed was duly acknowledged and recorded in deed records of Hidalgo County on the day of its date.

As the decision of the questions raised on this appeal turns largely upon the terms of this deed, so much of it as is material to an understanding of those questions is here given in full:

"Know all men by these presents, That I, Josiah W. Turner, a resident of the county of Cameron, in said State of Texas, for and in consideration of the sum of Six Hundred Dollars ($600.00) in lawful money of the United States of America, to me actually in hand paid by Julio Guzman, a resident of said county of Hidalgo, in said State of Texas, the receipt of which sum I hereby acknowledge and confess, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said Julio Guzman, his heirs and assigns all my right, title and interest in and to a certain piece or parcel of land situated in said county of Hidalgo, in a certain tract of land called and known as 'Santa Ana,' originally

granted to Benigno Leal by the Mexican Government, which said piece or parcel of land being one league of land out of the two leagues composing said tract of land aforesaid, being described and bounded as follows:"

Then follows a full and correct description of the lower or easternmost league of the Santa Ana grant, after which is the following:

"I also herein convey all of my rights and interest acquired in a certain deed bearing date July 1, A. D. 1879, from W. J. T. G. Brewster to me, the said Josiah W. Turner, which said deed is duly recorded in book C of real estate of said county of Hidalgo on pages 186 and 187, and which is duly made part hereof. And also for a good and valuable consideration received from the said Julio Guzman, I hereby agree that in the event that Mrs. Elizabeth Merriman should own the remaining three-fourths of said league of land herein conveyed according to the stipulation and agreement set forth in a certain deed bearing date March 29, 1878, from the said Elizabeth Merriman to the said Josiah W. Turner, and being duly recorded in book C of real estate of said county of Hidalgo, on pages 184, 185, as by reference thereto will more fully appear, and which is made part hereof for greater certainty, then the said Julio Guzman shall have the preference as purchaser of the same at the rate of three hundred and fifty dollars to be paid either to me, the grantor herein, or to the said Elizabeth Merriman according to the tenor of said agreement aforesaid.

"To have and to hold the above described premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Julio Guzman, his heirs and assigns forever: And I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Julio Guzman, his heirs and assigns, against every person whomsoever, lawfully claiming or to claim the same or any part thereof."

9. Julio Guzman was married long prior to 1882, his wife being Estefana. They had eight children. Immediately after said purchase from Josiah Turner, in the spring of 1882, said Guzman had the western line of the one-fourth league of land described in said deed from said Turner to him, which is also the western line of the lower league, surveyed by the county surveyor of Hidalgo County. Said Guzman accompanied the surveyor and knew where the line was. Immediately after having had the land surveyed said Guzman moved on the land with his said wife and children. They located on the eastern three-fourths of the eastern one-half of the Santa Ana grant, being the land in controversy. Guzman erected some six or eight houses on the land in suit, some six miles from a river, near a lake of water called Perchuga. He also built corrals and opened up fields on the land. Within a year or so after he went on the land, he enclosed that portion thereof fronting on the river in a pasture. The western line of this enclosure extended from the river northward along the western boundary line of the eastern league of the Santa Ana; thence eastward to a point 466 varas east of the western boundary line of the one-half league of

the Gato grant which said Guzman claimed; thence to the river. The enclosure embraced some 500 acres of the land in suit. Guzman and his family lived continuously on the land in suit from the spring of 1882 until his death, in December, 1901. Guzman moved on the land, claiming same as his own under the deed made to him by Turner. He claimed all of the eastern league of the grant as his own and continuously from the time he moved on the land up to the time of his death asserted and exercised ownership of the land and paid all taxes thereon, and used and enjoyed same by cultivating fields each year and grazing horses, sheep and cattle thereon, and having exclusive use and enjoyment of the land enclosed in the pasture. Julio Guzman had actual, peaceable, adverse, exclusive and continuous possession of the land in suit and claiming same under a duly registered deed from the spring of 1882 until his death, in December, 1901. Guzman's possession and claim of ownership was open, visible, notorious and hostile to plaintiffs and to the world.

10. Julio Guzman died intestate in December, 1901, his wife having previously died. They had eight children and these children and their descendants were their sole heirs and inherited the land in suit.

11. P. E. Blalack by deeds duly executed by said heirs and the legal guardians of such of them as were minors, succeeded to the title of all of said heirs. These deeds were executed and recorded at various times from February to August, 1902. By each deed the grantor therein conveyed to Blalack the undivided interest owned by him or her in the land in controversy as one of the heirs of Julio Guzman, specifying the amount of such interest, the several deeds taken together conveying the entire league. The deeds for about one-half of the entire league were recorded more than five years before this suit was filed.

12. After the death of Julio Guzman his children and grandchildren remained in possession of the land claiming the whole of it as their own, and cultivated, used and enjoyed the same and had exclusive and adverse possession thereof until they conveyed the same to the defendant, P. E. Blalack. When Blalack purchased the land from the Guzman heirs he went into the actual possession of the land so purchased, and the heirs who had not conveyed to him admitted him into possession with them and recognized his right to the extent of the interests conveyed to him, and said Blalack recognized the rights of the heirs who had not conveyed to him to the extent of the interest owned by them, and Blalack and the heirs who had not conveyed to him so recognized each other's rights and interest in the land and remained in the actual possession thereof, using, cultivating and enjoying the same, and claiming the same as their own adverse to the world and continuously up to the filing of this suit.

13. All taxes on the land in suit from 1882 have been paid for each year as they accrued in full, first Julio Guzman during his life, then by his children and grandchildren until they sold to Bla-

lack, and then by Blalack until he sold to Hawkins, and then by Hawkins and Blalack up to this time.

The suit was instituted May 1, 1907.

By the first assignment of error and the several propositions thereunder appellants assail the ninth conclusion of fact of the trial court, wherein the court finds that by deed dated April 24, 1882, Josiah W. Turner conveyed to Julio Guzman all his right, title and interest in the easternmost league of the Santa Ana grant, including the land in suit. One objection to this finding is that it offends against that provision of the statute which requires conclusions of fact and law to be separate. There is no merit in the objection.

Another objection is that the deed referred to in the findings does not purport to convey anything to the said Guzman except · one-fourth of a league that Turner had acquired from Elizabeth Merriman, together with whatever right might have been given by Mrs. Merriman to Turner, by way of option, to purchase the other three-fourths, which is the land in controversy. The merits of appellants' case rest very largely upon the construction of this deed from Turner to Guzman as a basis for the claim of title by limitation of five and ten years by appellees, without which appellants are entitled to recover. This deed has been fully set out in our eighth finding of fact; which differs from the ninth conclusion of fact of the trial court here objected to only in having a fuller statement of the contents of the deed.

If this instrument is, properly construed, a deed to the land in controversy, as found by the trial court, within the meaning of five years statute of limitation, or a memorandum of title thereto within the meaning of the ten years statute, it must be held that Guzman's title was complete under both, recorded at the time of his death, as there is no dispute that it was recorded on the day of its date, and the evidence is sufficient to sustain the finding of the trial court, which we have adopted in our findings of fact, as to payment of taxes, which was in fact admitted by appellants, and peaceable, adverse possession by Guzman from 1882 to 1901, and those holding his title since his death.

But appellants contend that it is neither such a deed to the land as would support the five years statute, nor such a memorandum of title as would support the ten years statute, but that it merely conveys to Guzman the option to purchase the three-fourths league, given to Turner by the deed to him by Mrs. Merriman as a part of her deed for the upper one-fourth of the league.

Appellants arrive at this conclusion by disregarding that part of the deed in terms conveying the land to Guzman, or absolutely subordinating the same to the additional stipulation in the deed with regard to the agreement of Mrs. Merriman in her deed to Turner of the one-fourth league, referring to the option to purchase the other three-fourths in case it be discovered that she owns it.

Turner had a deed to the league from Brewster, who in turn had the deed from the tax collector. Turner then had this title to the lower league, and in addition had the deed from Elizabeth Merriman for the upper one-fourth of the league, containing the option to

purchase the other three-fourths if it should be discovered that it belonged to her. It seems to us that in these circumstances there is no sound basis for appellants' contention that the intention, as shown by Turner's deed to Guzman, so far as the land in suit is concerned, was to pass only the option to purchase the three-fourths of the league. Certainly, no such construction can be given the terms of the deed. The deed first, in express and appropriate terms, conveys by metes and bounds the grantor's right, title and interest in the entire league, and then proceeds: "I also convey all of my right, title and interest" in the land conveyed by the Brewster deed. "And also for a good and valuable consideration" makes the agreement shown with regard to the option contained in the Merriman deed to Turner, referring to the three-fourths as three-fourths of "said league of land herein conveyed." The use of the language "in the event Mrs. Merriman should own the remaining three-fourths of said league herein conveyed" must be taken to refer only to the terms of the option agreement which embraced only the lower three-fourths of the league and can not, in the face of the positive terms of the conveyance of the entire league preceding, be taken as limiting such conveyance to the one-fourth of the league conveyed by Mrs. Merriman to Turner. The deed also concludes with a general warranty of title of the "said premises." No reference is made to the one-fourth of the league, and the warranty clearly refers to the title to the entire league embraced in the conveyance. It seems clear to us that the primary purpose of the deed was to convey the entire league, but to provide against the contingency of the title under the tax deed proving invalid, by giving Guzman the benefit, for whatever it was worth, of the conditional option of purchase from Mrs. Merriman of the lower three-fourths of the league. Guzman so understood it, for he paid taxes on the entire league and settled and placed his improvements on the lower three-fourths, which is the land in suit. We have discussed thus fully the terms of this deed for the reason that the appellants' whole case seems to rest upon the construction thereof claimed by them. The first assignment of error must be overruled.

By the second assignment of error appellants complain of the tenth conclusion of fact of the trial court wherein it is found that Julio Guzman built corrals and opened up fields without stating where said corrals were, or where said fields were on the land, or identifying in any manner the portion of the land enclosed, or the quantity thereof. It is a sufficient answer to this assignment to say that if the findings in question were not full or definite enough, appellant should have requested fuller or more definite findings. The findings in question, however, which are copied in full as the findings of this court as paragraph nine thereof, are not subject to the objection made. They are in fact based upon an agreement as to these facts on the part of appellants. It is not material on what particular portion of the land in suit the fields, corrals and houses were located. The court clearly finds the extent and character of the improvements and that they were located on the land in dispute, which was admitted. There is no merit in the assignment.

The third assignment of error can not be sustained. The deed from Amado Guzman to Blalack describes the land conveyed as an undivided 780½ acres out of a part of the Gato grant, describing it and the lower or easternmost league of the Santa Ana grant, which is clearly identified; and also described the interest conveyed as his one-eighth interest as one of the eight children of Julio Guzman and wife.

The finding of the court, referred to in the fourth assignment of error, that the deed from Mrs. Longoria and husband to Blalack was duly recorded, was error. The deed showed on its face that the property conveyed was the separate property of Mrs. Longoria, and the record of the deed exhibited showed that in recording, an essential part of the certificate of her acknowledgment was omitted. Under these facts it could not be said that the deed was duly recorded. (Taylor v. Harrison, 47 Texas, 454.) The original deed was introduced in evidence showing the execution of the conveyance and it was not material to appellees' rights, as we view the case upon the limitation title, that this deed should have been recorded. The limitation title was complete in Julio Guzman at his death. The error is entirely immaterial.

There is no error in the fifth assignment of error, which complains of the twentieth and twenty-first conclusions of fact of the trial court. The facts as found with regard to the extent and character of the improvements on the land, and the acts of cultivation, use and enjoyment, evidencing the actual possession, are entirely sufficient to support the limitation title to the entire tract held under the deed to Guzman, whether it be held as a duly registered deed under the five years statute or a written memorandum of title under the ten years statute. We have held that the instrument was, in fact, a deed, conveying the entire league.

What has been said with regard to the effect of the deed from Turner to Guzman sufficiently answers the first and second propositions under sixth assignment of error. With regard to the second proposition, the several deeds from the heirs of Julio Guzman to Blalack clearly show that the undivided interest owned by each grantor as one of the heirs of Julio Guzman and wife, was intended to be and was conveyed. It clearly appears that separate interests were conveyed by each deed, the sum of the deeds embracing the whole. The case of Noble v. Hill, 8 Texas Civ. App., 171, and other cases to the same effect cited by appellants are not in point.

We overrule the seventh assignment of error. There is no merit in either of the three propositions advanced by appellants thereunder. The deed of Josiah Turner was a duly registered deed to the land in dispute, and the actual possession thereunder was shown to be adverse to all the world. It was not necessary, under the facts established, that Guzman should have ever otherwise repudiated the title of appellants, or otherwise notified appellants of his claim of title, to set the statute of limitation in motion. It is not necessary to repeat here what we have said elsewhere as to the effect of the deed to Guzman by Turner. It was not a quitclaim deed, although it contained the terms "all my right, title and interest."

The habendum clause is "to have and to hold the above described premises," etc., and there is a general warranty of "all and singular the said premises." In that portion of the deed containing the transfer to Guzman of Turner's right under the option agreement with Elizabeth Merriman the reference is to the three-fourths "of the said league herein conveyed," evidently referring to the former portion of the instrument as a conveyance of the entire league, and showing that the grantor so understood it. It seems to be settled by the authorities in this State that such a deed is not a mere quitclaim, but conveys the land, and not a mere chance of title. (Garrett v. Christopher, 74 Texas, 453; Abernathy v. Stone, 81 Texas, 433; Evans v. Ashe, 108 S. W., 403; Wynne v. Wood, 41 Texas Civ. App., 235; Laughlin v. Tips, 8 Texas Civ. App., 649; Bedford v. Raynor Cattle Co., 13 Texas Civ. App., 623; Moore v. Swift, 29 Texas Civ. App., 53; Pool v. Foster, 49 S. W., 924.) It would seem that if the deed were a mere quitclaim deed it would support the plea of limitation of both five and ten years. (McDonough v. Jefferson Co., 79 Texas, 535; Parker v. Newberry, 83 Texas, 430; Harris v. Bryson, 34 Texas Civ. App., 532.)

The court found that appellants showed title and were entitled to recover unless appellees were entitled to the land under their claim of title by limitation. Appellees had no other title, and if the deed to Guzman was sufficient to support such claim, it was all appellees needed. But we entertain no doubt that the deed in fact conveyed the entire league. What we have said disposes of the eighth, ninth, tenth and eleventh assignments of error and the propositions thereunder, which are overruled.

By their twelfth assignment of error appellants assails the conclusion of the trial court that appellees were entitled to recover the land under their plea of five years limitation. We have held that the deed to Guzman was sufficient as a registered deed to the land to support this defense. As we have found in our conclusions of fact, the evidence was amply sufficient to establish on the part of Guzman actual, peaceable and adverse possession, together with cultivation, use and enjoyment thereof from the date of his deed in 1882 up to the date of his death, in 1901, a period of nineteen years, with payment of taxes for each year of such possession. The evidence leaves no doubt of such possession, and as little doubt that it was adverse to appellants and everybody else and exclusive as to them, and that it was held under a claim of title to the land in controversy, and not any less interest. Not only is the evidence sufficient to sustain the trial court's findings on this point, but it really excludes any other conclusion, based as it is upon admissions of appellants by agreement shown in the record. The title by limitation being complete in Julio Guzman at his death descended to his heirs and passed by their deeds to appellees. But the evidence further fully supports the conclusion of the trial court that this adverse possession, with all the elements necessary to support a limitation title, was continued by the heirs up to the date of their respective deeds to Blalack and by him at least as to half of the land under the five years statute, and the whole under the statute

of ten years, up to the filing of this suit in 1907. It is true that not all of these deeds were recorded five years prior to the filing of the suit, and one of them, that of Mrs. Longoria, was not duly recorded at all, but this did not affect the limitation title complete at date of Guzman's death, nor the ten years limitation title at all. The twelfth assignment of error raises the question here discussed and is overruled.

No objection was made to the admission of the Longoria deed except as a recorded deed to support the statute of limitation of five years. We have seen that the error of the court in holding that the deed was duly recorded, was immaterial and harmless. The thirteenth, fourteenth and fifteenth assignments of error can not be sustained.

Appellees were permitted, over the objections of appellants that the questions called for the conclusions of the witness, to ask a witness whether Julio Guzman paid taxes for the Merriman people or anyone else, to which the witness answered: "For the land," and to a further question who he paid taxes for, whether for himself or for any other person, the witness answered: "For himself." We think there is no merit in the objection and it was properly overruled. By written agreement filed in the suit it was admitted that Julio Guzman paid all taxes on the land in suit as they accrued for each year, up to the time of his death, and after his death all taxes were paid by his children until they conveyed to Blalack, and that Blalack and Hawkins had paid all taxes since their respective purchases. The presumption would be that the taxes were paid by Guzman himself. The objection that the answers aforesaid were the conclusion of the witness is not sound.

The same may be said with regard to the testimony referred to in the seventeenth assignment of error, as to whether or not Blalack took possession of the land after he bought. This fact was also proven by Blalack and was practically undisputed.

Objection was also made to the testimony of the witness Julio Guzman, Jr., that neither he nor any of his brothers and sisters recognized any other as having any rights in the land. The objection was that such testimony was the conclusion of the witness and was properly overruled.

The evidence of Julio Guzman referred to in the nineteenth assignment, and objection thereto, was of the same general character. The assignment presents no ground for reversal.

All of this testimony referred to above was addressed to the character of Guzman's possession and claim. It may be said that the fact of this possession and that it was exclusive as to the entire tract in controversy was practically undisputed and established beyond question by evidence not objected to. If we are correct in the construction we have given the deed from Turner to Guzman, his entry into possession immediately upon the execution of the deed, establishing his residence and building houses and corrals and fencing an extensive tract and using the same for a pasture, and the payment of taxes on the entire tract every year, all of which is established by undisputed evidence, would of itself establish *prima*

*facie* that such entry and possession, use and enjoyment were based upon the deed and a claim of title thereunder to the entire tract conveyed by the deed. During all of the time since such entry in 1882 no evidence which we have been able to find in the record, or which has been referred to in the brief, except the evidently unintentional statement of Julio Guzman, afterwards corrected by him, that his father only claimed the land fenced, has the slightest tendency to show that Guzman recognized any other title or claim of title, or claimed less than the deed conveyed to him. Appellees seem to have undertaken affirmatively to show that Guzman, and those claiming under him after his death, asserted exclusive ownership and recognized no other title, and much of the testimony objected to was to this general effect. If the rules of evidence were violated in the admission of any of it, such error would not require or authorize a reversal of the judgment, particularly in a trial by the court without a jury. With this statement, and without further discussion, the twentieth, twenty-third, twenty-fourth, twenty-fifth and twenty-seventh assignments of error, none of which present any grounds for reversal of the judgment, are overruled.

The testimony of the witness James B. Wells, referred to in the twenty-sixth assignment, that when approached by a man by the name of Merriman to institute suit for recovery, he made investigation of the title and declined the employment, was in substance and effect nothing more than the opinion of the witness that he did not think said Merriman's claim valid. It was error to admit the testimony whether it be as to the contents of a letter not produced, on which ground it was also objected to, or that generally it was immaterial and irrelevant. Notwithstanding, however, appellant's statement in the brief that this witness was the most effective witness against them, and that he is a lawyer of great reputation and standing in that section, we can not bring ourselves to think that this evidence influenced the court in its judgment, especially when the practically undisputed and unobjectionable evidence in the record fully supports the judgment. The testimony of the witness that he knew it was Guzman's land and that he lived on it, could not amount to more, or be understood to mean more, than that witness knew that Guzman had a deed to the land and was claiming it, which was undisputed, except by appellants' contention that the deed to him did not convey the land in dispute.

The testimony referred to in the twenty-first, twenty-second, twenty-ninth and thirtieth assignments of error is of such a character that if objectionable at all, its admission does not require or authorize a reversal of the judgment. The testimony was of the most trivial character and could not reasonably be supposed to have influenced the court in view of the sufficiency of the other evidence generally to establish the facts upon which the judgment is based. The witness L. C. Hill being asked whether Julio Guzman claimed ownership and possession of this land at that time (1900), answered: "Yes, sir. Everybody in this country knew that Julio Guzman owned it; that it was his ranch and land there." The latter part of the answer was objectionable as not being responsive to

the question and for that reason should have been stricken out, but it was utterly immaterial. It did not at all matter whether anyone actually knew of Guzman's claim and possession. The recorded deed furnished evidence of the claim, and his possession was open and notorious. Such error as there was in admitting the testimony and refusing to strike it out was harmless in view of the whole testimony.

The thirty-second, thirty-third and thirty-fourth assignments of error are addressed to the error of the court in refusing to render judgment for appellants and in rendering judgment for appellees. In view of our findings of fact, and what we have said of the evidence, further extension of this opinion in a discussion of these assignments seems to us unnecessary. The trial court found that appellants had title and were entitled to recover the land, unless their claim was defeated by the claim of title in appellees under the statute of limitation, but further found in favor of appellees' claim under five years limitation. The court may as well have sustained also that title under ten years statute. If we are correct in our interpretation of the deed from Turner to Guzman, the practically undisputed evidence establishes, in our mind, beyond question appellees' claim under both the five and ten years statute, with such conclusiveness as to render such errors as may have been committed in the admission of testimony harmless, even if the trial had been with a jury. It may be said that if appellees had no other claim of title except that under the statute of limitation of five years, resting upon their duly recorded deeds from the heirs of Julio Guzman and wife, such title was established only to about one-half of the land, but the actual, peaceable and adverse possession of Julio Guzman from 1882 to his death, in 1901, and of his heirs from that date up to their conveyances to Blalack, in 1902, under duly recorded deeds, with payment of taxes, was so conclusively established that no other judgment than one for appellees could have properly been rendered. In such case the judgment should not be reversed on account of immaterial errors which may have been committed in a trial by the court, in the admission of evidence.

We have carefully examined all of the assignments of error and the several propositions advanced under each, which are severally overruled, and we have concluded that none of them present any ground for reversal and the judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.