MIDDLESWORTH et al. v. HOUSTON OIL CO. OF TEXAS et al.†

(Circuit Court of Appeals, Fifth Circuit. January 24, 1911. Rehearing Denied February 28, 1911.)

No. 1,970.

1. EXECUTION (§ 320*)—SHERIFF'S DEED—VALIDITY AND PRESUMPTIONS.
   Under the law of Texas, a sheriff's deed to convey title must be supported by a valid judgment by a court of competent jurisdiction and a valid execution thereunder which are ordinarily proved by duly certified

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied February 28, 1911.

copies from the court records; but, where such records have been destroyed, proof may be made by other legal evidence, and, where 30 years have elapsed, the existence of the judgment and execution recited in the deed may be presumed, but not a judgment or execution varying from that described.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 940–945; Dec. Dig. § 320.*]

**2. EXECUTION (§ 320*)—SHERIFF'S DEED—RECITALS.**

As a general rule, a claimant under a deed is estopped from denying the material recitals in such deed, and recitals of the power to convey asserted by the grantor are material; but the rule of decision in Texas is that a misrecital of the judgment in a sheriff's deed, such recital not being required by statute, is not material if it is shown that the sale was under a valid and subsisting judgment and execution.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 940–945; Dec. Dig. § 320.*]

**3. EXECUTION (§ 256*) — QUESTION FOR JURY — EVIDENCE — CONTRADICTING WRITING.**

An action was brought in a court of Texas against the unknown heirs of a decedent to recover land which had been patented to such heirs by the state. The court appointed attorneys to defend the suit, which they did successfully. In 1878, after the entry of judgment by the trial court, but before the case was heard on writ of error by the Supreme Court, which affirmed the judgment, the land was sold by the sheriff; his deed reciting that the sale was made under an execution issued on a judgment against the unknown heirs of the decedent in favor of the attorneys so appointed by the court for a stated sum of money. The execution and court records of the time had been destroyed by fire prior to 1906, when plaintiffs, who were the heirs of such decedent, brought action to recover the land from defendant which claimed through the sheriff's deed. A personal judgment against unknown heirs such as recited in the deed would have been void as without due process of law; but there was parol testimony tending to show that there was no such judgment, and that the sale was made under an order entered in the original action against such heirs, fixing the compensation of the attorneys who defended the action and making the same a lien on the land. *Held*, that such testimony, contradictory as it was of the recitals in the deed, was not sufficiently conclusive to establish the validity of the sale as matter of law, and that the question was one for the jury.

[Ed. Note.—For other cases, see Execution, Dec. Dig. § 256.*]

**4. ATTORNEY AND CLIENT (§ 192*)—LIEN OF ATTORNEY APPOINTED BY COURT FOR UNKNOWN DEFENDANT—FORECLOSURE—TEXAS STATUTE.**

Act Tex. Nov. 9, 1866 (5 Gammell's Laws, 125), gave a right of action to recover land against unknown owners on service by publication and authorized the court to appoint an attorney to represent such owners, to allow him a reasonable compensation, and to enter a judgment therefor which should be a lien on the land. *Held*, that the statute did not authorize the issuance of an execution on such judgment in favor of the attorneys, who were not parties to the cause, and the sale of the land thereunder without further notice to the owners, but that, in the absence of provision otherwise, the lien could only be foreclosed by an equitable suit and on due notice to the owners.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 425–427; Dec. Dig. § 192.*]

In Error to the Circuit Court of the United States for the Eastern District of Texas.

Action at law by Caroline C. Middlesworth and others against the Houston Oil Company of Texas and others. Judgment for defendants, and plaintiffs bring error. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This action was brought by plaintiffs in error March 9, 1906, in the ordinary form of trespass to try title against the Houston Oil Company of Texas, and various other defendants, for the recovery of a league and labor of land in Hardin county patented by the Governor of Texas to the heirs of George Brown on September 7, 1860. On the trial before court and jury November 24, 1908, the plaintiffs showed themselves to be heirs of George Brown and the death of George Brown, and their right to recover such title as is now vested in the heirs of said George Brown is undisputed.

The defendant the Houston Oil Company of Texas pleaded not guilty as to all but 50 acres which it disclaimed, the three, five, and ten years' statutes of limitation, while the other defendants, Richmond Orton, Henry and Louisa Fugia, Jack Tonchett, J. K. P. Holland, each pleaded "not guilty" and the ten years' statute of limitation to 160 acres each, while Jack Noland pleaded "not guilty." Plaintiffs pleaded in answer to the pleas of limitation coverture since 1875. John L. Little claimed through assignments from the defendant settlers and pleaded limitation under the ten years' statute. The Houston Oil Company claimed limitation through some of the settler defendants, as tenants, while said defendants denied tenancy and claimed 160 acres each in their own right, and an issue of fact was squarely drawn as to the question of their tenancy; their occupancy for the requisite time being undisputed.

The trial court peremptorily instructed the jury to bring in a verdict in favor of the Houston Oil Company of Texas against the plaintiffs, and submitted to the jury the issues of limitation between the Houston Oil Company and its codefendants. The verdict of the jury was against the Houston Oil Company's contention of tenancy and was in favor of the squatters, and motion of said company for a new trial was overruled, and judgment was accordingly entered. It therefore appears that the Houston Oil Company has no title by limitation, and such title as it has is a record title. The only issue in this court is the correctness of the charge of the trial court giving peremptory instruction against the plaintiffs in error and in favor of the Houston Oil Company.

It is shown by the evidence that on September 1, 1856, a special act was passed by the Legislature authorizing the issuance of a land certificate to the heirs of George Brown, deceased. Pursuant to this act, certificate No. 5,017/5,018, was issued, under which a patent issued in favor of said heirs, and the title to the lands in controversy is now vested in them unless it has passed out by the sheriff's sale hereinafter referred to.

The Houston Oil Company, to take the title out of said heirs, introduced a sheriff's deed from the sheriff of Hardin county to John P. Work in words and figures as follows:

"The State of Texas, County of Hardin.

"Whereas by virtue of an execution to me directed and issued from the district court of Hardin county, Texas, on the 10th day of August, A. D. 1878, upon a judgment obtained in said court on the 19th day of July, A. D., 1878, by P. A. Work and N. A. Cravens, Jr., against the unknown heirs of George Brown for the sum of six hundred and fifty dollars, I levied upon on the 10th day of August, A. D. 1878, and advertised for sale all the right, title and interest that said unknown heirs of George Brown had in and to a league and labor of land patented to the heirs of George Brown by the state, on the 7th day of September, A. D. 1860, and situated in said Hardin county (here follows field notes of land which are omitted) containing within the above set out metes and bounds one league and one labor, or four thousand six hundred and five acres of land, and whereas on Tuesday, the 3d day of September, A. D., 1878, the same being the first Tuesday in said month of September, and having previously advertised said sale and the time and place thereof for the length of time and in the manner required by law, I proceeded to sell at the courthouse door in the town of Hardin in said Hardin county, between the hours prescribed by law, to the highest bidder, at public auction, all the right, title and interest that the said unknown heirs of George Brown had in and to the above mentioned and described league and labor of land, and whereas at such sale John P. Work having bid therefor the sum of one hundred and seventy-five dollars, and this being the

highest and best bid made, became the purchaser thereof. Wherefore, know all men by these presents that I, W. W. Lyon, sheriff of Hardin county, Texas, in view of the premises and in pursuance of the authority in me vested by law, have sold and conveyed unto John P. Work of the county of Hardin and state of Texas, for and in consideration of said sum of one hundred and seventy dollars, all the right, title and interest that the said unknown heirs of George Brown has or had, in and to the above mentioned and described one league and labor of land, together with all and singular the rights, privileges or immunities thereunto belonging or in any wise incident or appertaining, to have and to hold and to possess the same unto him, the said John Work, his heirs or assigns forever as against the claim of the said unknown heirs of George Brown and any and all persons claiming by, through or under the unknown heirs of George Brown, subsequent to the said levy on the 10th day of August, A. D. 1878, by virtue of the execution hereinbefore mentioned.

"Given under my hand September 4, A. D. 1878.

"W. W. Lyon, Sheriff of Hardin County.

"The State of Texas, County of Hardin.

"Personally appeared before me on the 7th day of September, A. D. 1878, W. W. Lyon, sheriff of Hardin county, aforesaid, and who is personally well unknown (known) to me, who acknowledged that he had executed the above and foregoing deed of conveyance for the purpose and consideration therein specified.

"Witness my hand and official seal in Hardin county, September 7, 1878.
"[Seal]        W. G. Brackin, C. D. C. H. C., By O. H. Butler, Deputy."

No judgment nor execution was produced in support of the judgment, but it was agreed by counsel for both sides that the judgment and execution records of Hardin county for this date were destroyed by fire.

N. A. Cravens, one of the plaintiffs in execution, and in the recited judgment, testified that he never had knowledge of any suit in Hardin county in which he was plaintiff, that he was never coplaintiff with P. A. Work in any such suit, never authorized such a suit, nor obtained such a judgment as that recited in the sheriff's deed, and never asked for nor had execution issue against the unknown heirs of George Brown, and never authorized the issuance of same, nor authorized nor obtained a levy upon the land in question.

Upon testimony of Mr. Cravens, taken by defendant the Houston Oil Company of Texas, he testified that he and Col. P. A. Work together represented the unknown heirs of George Brown, under appointment of the court, in case instituted in Hardin county by McKinney et al., in 1877 or 1878; same being the case reported in 51 Tex. 94. He further testified as to the nature of the plaintiffs' cause of action, and said that a copy of the petition in said suit was attached to his answers.

This petition, omitting description of land, is as follows:

"Plaintiff further alleges that she is the owner of said land by and through mesne conveyance from said George Brown, but that the before recited transfer from George Brown to Josiah H. Bell has never been recorded nor proven for record, nor acknowledged as the law requires, owing to the death of the grantor and each of the subscribing witnesses thereto, and by plaintiff being unable to find the requisite witnesses who are acquainted with the handwriting of said George Brown, and that the failure to have said transfer proven or acknowledged for record, and the possible claim of defendants in and to said land, is a cloud upon the plaintiff's title thereto, whereby a right of action has accrued to plaintiff against defendant. Plaintiff further alleges that the mesne transfer is, first, a deed from Thaddeus C. Bell and James H. Bell, sole heirs at law of Josiah H. Bell, deceased, to James W. Coffee, dated 9th of March, 1858. The will of said Jas. W. Coffee, deceased, whereby plaintiff is made sole legatee of said Jas. W. Coffee, duly recorded in Brazoria county, Tex. Wherefore plaintiff alleges that she is the owner of said land, and she sues and prays that the said defendants may be cited in the terms of the law to appear and answer this petition. That upon a hearing hereof the plaintiff may have a judgment establishing the said trans-

fer from the said George Brown to the said Josiah H. Bell, as aforesaid, and a decree for the title to said land as against the defendants, and have such other and further judgment and decrees to justice and equity shall appear and including costs and general and special relief as in duty bound, etc.

"Winch & Schaffer, For Plaintiff."

He further stated: That in said case a fee of $650 was allowed himself and Col. P. A. Work for services as attorneys for the unknown heirs, and that his recollection is that said amount of money was declared a lien on said land to secure the payment of said amount. That he and Col. Work made a division of the fee, he getting $260 and Col. Work $390 thereof, and that he transferred his interest in said fee to John P. Work, a son of Col. P. A. Work, his associate in the case.

The agreement dividing the fee and assignment thereof to John P. Work is as follows:

"The State of Texas, County of Hardin.

"Be it known that on this, the 19th day of July, A. D. 1878, the sum of six hundred and fifty dollars was allowed P. A. Work and N. A. Cravens as reasonable compensation for legal services rendered by them as attorneys at law, under appointment of the court to defend in behalf of the defendants in a certain suit, No. 140, in the district court of said Hardin county, wherein E. L. McKinney and her husband, Samuel McKinney, were plaintiffs and the unknown heirs of George Brown were defendants, and whereas judgment has been entered in favor of the said Work and the said Cravens for said sum of $650.00, and the same decreed to be a lien upon said land, therefore, be it known that said Work and Cravens agree between themselves, to wit:

"First. That said P. A. Work's interest in said sum of $650.00 is three-fifths or $390.00.

"Second. The said N. A. Cravens' interest in said sum of $650.00 is $260.00, or two-fifths.

"Given under our hands in duplicate July 18, 1878.

"P. A. Work.
"N. A. Cravens, Jr.

"My within named interest to the judgment of Work and Cravens v. Heirs of George Brown is this day for value received transferred and conveyed to John P. Work of Hardin county, Texas, who is hereby entitled to the same.
"N. A. Cravens, Jr."

Mr. Cravens testified further that he had no knowledge with reference to any sale made of said land. He testified that the result of the trial in the district court was a judgment sustaining a demurrer to plaintiff's petition. This judgment was affirmed by the Supreme Court upon writ of error.

Col. P. A. Work testified that he is familiar with all the proceedings in the case of McKinney v. Brown Heirs, and testified, among other things, as follows: That affidavit was made that the heirs were unknown, and service by publication was had for the requisite period in the Jasper Newsboy, which was the official paper at that time. That the case was continued at the July term in 1877, stood for trial in 1878, when an agreed judgment was sought to be taken but was refused by the court, and Col. Work appointed to defend in lieu of Cravens, and the case was continued until the July term, 1878, when plaintiffs' counsel and Mr. Cravens were present, and Work and Cravens both defended, and the court sustained demurrers to plaintiffs' petition and rendered judgment in favor of the defendants.

Col. Work further testified:

"The court, in order to determine what would be proper compensation (of attorneys for absent owners), heard evidence. I remember there were some attorneys testified that in a stated land case, where the fee was wholly contingent and consisted of a part of the recovery, some insisting on one-quarter and some one-third and some half of the recovery, and the court announced that it had no authority to award a part of the land in controversy, and further testimony was introduced to show the value of the league and labor of land, and that testimony varied from 60 cents an acre to 75 cents an acre, I disremember; that was 30 years ago and lands were not valuable then, and I don't know how he arrived at that percentage or anything of the sort. In

his conclusions, after hearing these values, he announced that his allowance of a fee of $650 to be governed, of course, by the testimony of the value of the land. As I have stated, I drew up the judgment. Whether I entered it in the minutes or not, I am not sure, but the clerk at that time, Wm. G. Brackin, could scarcely write, and for that reason I probably entered it on the minutes. It was entered, and an order of sale and execution was issued for the league and labor of land. That was in July, 1878. Mr. Shafer gave notice of appeal to the Supreme Court of Texas. He might have made a motion for a new trial. At all events, he gave notice of appeal, and the memorandum of it was made on the docket. I told Mr. Cravens that I intended to see Mr. L. Shafer, and if he appealed and perfected the appeal for plaintiffs within the time required by law, which, I believe, was 20 days at that time. At any rate, he did not appeal in the time, and the time for the forwarding—or rather, I should say, the time of filing—the bond expired, and on the very next day after the expiration of that time I, myself, drew up the writ of sale for the property and handed it to the clerk, and he put his jurat and seal on it, and on the same day I handed that order of sale to the sheriff, W. W. Lyon, of Hardin county, Tex. I am satisfied that that was some time in August that the writ of sale issued, and I remember that the reason I wanted the notice posted that day was that the land might be advertised fully 20 days exclusive of the day of posting the notice and the day of sale. Anyhow, it was advertised and sold out in September some time, in the early part of the month, I forget the exact day of the month, on the first week, first Tuesday I guess, the land was sold under that order of sale. I believe I have already stated about the issuance of the order of sale. I was not present at the sale. I was not in town. My son, John P. Work, was present at the sale. Now, after the judgment had been entered making the allowance of $650 as compensation to the attorneys, Mr. Cravens and myself, by an agreement between ourselves before the sale by the sheriff, partitioned the fee."

Witness further testified that the agreement for division and the transfer of Cravens' interest to his son were executed on the day judgment was entered, and that John P. Work attended to the sale of the property, and having bought the whole league for $175 and became the purchaser with his father in the deal, and afterwards, having taken title in his own name, he deeded one-half thereof to witness, and that he did not know his son had taken deed in his own name for six months and then demanded deed for his part. He says his son handled the sale and subsequent proceedings of return of execution, etc., and probably wrote the return.

With reference to the return upon the order of sale, he further testified:

"Now, you asked me about the return or indorsements upon the order of sale. I notice the sheriff's deed says under execution. I drew up the order of sale in conformity with the judgment with the statute before me and handed it to the sheriff, and I wrote on that the levy. I wrote the levy on the writ because the sheriff usually did not seem to be well up in his duties, and I wrote that. After the sale I wrote no return. I had nothing to do with it after that. There was an order from the court authorizing a forced sale of the property."

Witness testified that he took no evidence in the case, did not attempt to find or locate the defendants, his clients, and did not know that they were living or had an actual existence; that, after defeating plaintiffs' suit, he made no effort to find the unknown heirs, nor did he make any inquiry to ascertain where they were.

With reference to the judgment for attorney's fees, he testified as follows:

"I could not state that language. The substance was, naming the attorneys, Work and Cravens, appointed by the court to defend in behalf of the unknown heirs of George Brown, are allowed compensation to the amount of $650, and let judgment be entered and made a lien upon the land or property in controversy, and let an order of sale issue. I prepared the judgment in accordance with that. There was no order that Work and Cravens take a judgment against the unknown heirs of George Brown, but that Work and Cravens be allowed compensation in the sum of $650 and judgment be entered therefor and made a lien upon the property in controversy, and I fol-

lowed that order. I would not attempt to quote the language. Compensation to the amount of $650 is hereby allowed by the court, or is allowed Work and Cravens, giving their full names, as compensation for their services for defending under the appointment of the court, for which let a judgment be entered operating as a lien upon the property in controversy. Of course, I could not undertake after the lapse of 30 years to state that every 't' was crossed and every 'i' dotted; that was the pith and substance of it."

Witness also testified:

"I employed the law firm of Willie & Cleveland of Galveston, and furnished them with a law brief, a memorandum of authorities, and also with my equitable brief upon which I made the argument before the court in support of my demurrers. I was not 15 minutes in making the argument, and it was sustained, and I referred to the court many equity authorities. I sent that to Willie & Cleveland."

He testified that he paid Willie & Cleveland $200 for the services: that he had a personal interest in addition to the interest of his clients. He further testified that his son represented him in making the sale; that his son paid Cravens $75 for his $260 interest in the fee; that he did not get a cent from the sale; that his son was instructed to buy in the land under the judgment; that the 4,605 acres bought in by him for $175 was actually worth from 50 cents to 75 cents per acre; that, if the George Brown heirs had appeared on the scene, he would have deeded them back their land for the fee and interest; that he believed the heirs of George Brown were mythical; that he sold the land purchased for $175 in 1878, and warranted the title in February, 1882, for $5,000, half cash. Witness said the judgment was as recited in the Cravens' contract above set out; that he did not know whether he rendered or paid taxes on the land, but supposes he did; that he first went on the land about the middle of September, 1878. It was a very few days after the sheriff's sale, I think less than a week, and before the case had been taken up by writ of error.

Witness was asked: "Now, during all the time you were representing the unknown heirs of George Brown in the case in the higher court and in the lower court, you were cutting the timber off that land?" To which he answered as follows:

"The facts are as have been stated. You can make what deductions you please. The notice of appeal was given and the appeal not perfected, and the writ of sale was issued and the land sold. I believe I remarked to you that the case went up by writ of error and not appeal. I had no doubt myself, of course, it was a matter of opinion, from my knowledge of the law of the country that there was no error of law that could possibly warrant the Supreme Court in reversing the judgment."

Witness was asked the following questions:

"There was no suit, as I understand your testimony, styled P. A. Work and N. A. Cravens, Jr., against the unknown heirs of George Brown?"

To this he answered:

"No, sir; and there was no judgment against the unknown heirs of George Brown in favor of Work and Cravens, but simply a judgment against the land in the nature of a condemnation proceeding under the statute just as you condemn land in any other suit."

Witness further testified that he received from $1,000 to $2,000 from timber taken off the land prior to his sale of the land, and remaining timber for $5,000 in 1882.

The bill of exceptions contains all the evidence, most of which is upon the question of limitation, but the above is all the material evidence relating to the propriety of the court's peremptory instruction against plaintiffs. This part of the charge is as follows:

"In the suit of the plaintiffs against the Houston Oil Company of Texas, you are instructed that the judgment rendered in Hardin county, and the sale thereunder, passed such title as the unknown heirs of George Brown had, and vested the title in the Works, and the defendant the Houston Oil Company of Texas holds the title to the league and labor of land by its duly registered and mesne conveyances, and, as against the plaintiffs, are entitled to a verdict for the land in controversy."

Plaintiffs excepted to the action of the court in instructing the jury as above, and before the retirement of the jury from the bar requested other special instructions which were refused.

John Hamman and Oliver J. Todd, for plaintiffs in error.
Oswald S. Parker and A. D. Lipscomb, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). The plaintiffs in error, plaintiffs below, were entitled to recover the land in controversy as against the Houston Oil Company, unless said company established its title; and the question before us is whether on the trial the Houston Oil Company proved by undisputed evidence its title to the land in controversy through mesne conveyances from the heirs of George Brown.

The basis of the claimed title is a sheriff's deed dated September 4, 1878, in support of which no record evidence of judgment and execution thereon were produced; but, the court records having been admittedly destroyed, evidence was offered and admitted tending to prove a judgment and execution.

It is undisputed in Texas that, for a sheriff's deed to convey title, it must be supported by a valid judgment of a court of competent jurisdiction and a valid execution thereunder. Ordinarily, this proof is made by duly certified copies from the records of the courts wherein the judgment was rendered. Where, as in this case, such records have been so lost or destroyed that certified copies of the proceedings cannot be produced, the proof may be made by other legal evidence. Where the records are destroyed and considerable time has elapsed, the decisions in Texas are that, where possession is shown under the sheriff's deed, a judgment such as recited in the execution produced may be found by the jury (Walker v. Emerson, 20 Tex. 707, 73 Am. Dec. 207) and, where 30 years have elapsed, the existence of the judgment and execution recited in the sheriff's deed ought to be presumed (Giddings v. Day, 84 Tex. 605, 19 S. W. 682).

In Tucker v. Murphy, 66 Tex. 355, 359, 1 S. W. 76, 78, Mr. Justice Stayton, for the Supreme Court, says:

"It is true that, ordinarily, after the lapse of 30 years, the power of a person who assumes to have executed a deed under power of another or in a fiduciary capacity will be presumed. This, however, is but a presumption of fact, which is indulged upon the idea that time has made it impracticable to make such proof of the actual existence of the power, as may be made in regard to matters recently transpiring. Whether such a presumption will or may be indulged in a given case must depend on the facts presented. In one case the facts in relation to a deed, purporting to have been executed under a power, may be such as to preclude the idea that there still exists means, other than such as the deed itself affords, and the acts of the parties claiming under or adversely to it long continued present, whereby to prove the actual existence of the power, and in such a case the power will be often presumed. In another case the deed may be shown by itself to have been executed under a power, but under such circumstances that the primary proof of the existence of the power must be presumed to exist. In such case the failure to produce such primary proof, or to show that it cannot be produced, would seem to require the holding that the evidence of the existence of the power, which arises from the ancient character of the instrument, and

the action of those interested under or adversely to it, is not sufficient proof. In the case before us the deed which it is claimed is sufficient evidence of the power of the persons who executed it to pass the title which it purports to convey shows, if it speaks the truth, that the probate court for Goliad county granted letters of administration on the estate of Jacob Aaron, that by an order entered on its minutes it directed the administrator of that estate to sell the land certificate in question, and that by an order subsequently entered, in a similar manner, the sale, after being properly reported, was confirmed."

The above-cited and other Texas cases we have examined do not provide for the presumption of any other judgment or execution than according to the recitals or descriptions thereof found in the sheriff's deed, and we know of no reason supported by the text-books or adjudged cases holding that, where a sheriff's deed is produced, any judgment can be presumed that varies from the execution if that is produced, or from the recitals in the sheriff's deed if neither the judgment nor execution can be produced.

In French v. Edwards, 13 Wall. 515, 20 L. Ed. 702, Mr. Justice Field, for the Supreme Court, says:

"It is also contended that the recitals in the deed were not required, and therefore do not vitiate the deed; but the cases cited fail to support the position as broadly as here stated. They only show that a defective or erroneous recital of the execution, under which a sheriff has acted, will not vitiate his deed if the execution be sufficiently identified. Every deed executed under a power must refer to the power. As an independent instrument of the holder of the power, it would not convey the interest intended. The deed of a sheriff forms no exception to the rule. But it is not essential that the execution, or judgment under which he acted, should be set out in full, or that his proceedings on the sale should be detailed at length. It is sufficient if they be referred to with convenient certainty, and any misdescription not actually misleading the grantee would undoubtedly be considered immaterial. But if the manner in which the power is exercised is recited, it being a proper matter for recital, then the recital is evidence, not against strangers, but against the grantee and parties claiming under him. Thus, if a sheriff should refer in his deed to an execution issued to him, and recite that, in obedience to it and the statute in such case provided, he had sold the property to the highest bidder, it would be presumed that he had done his duty in the premises, given the proper advertisement, and made the sale at public auction in the proper manner. But if he should go farther and recite that he had sold the property, not at public auction, but at a private sale, the deed would be void on its face; the sale by auction being essential to a valid execution of the authority of the sheriff. The vendee, by accepting the conveyance with this solemn declaration of the officer as to the manner in which his power was exercised, would be estopped from denying that the fact was as recited."

In the present case, taking it that 30 years had elapsed since the sheriff's deed, it was permissible for the court to have presumed the judgment and execution thereunder of the description given thereof in the deed; but it was not permissible to presume any judgment substantially varying therefrom.

This would dispose of the case were it not for the fact that the judgment recited in the sheriff's deed would be void on its face because the judgment recited is a personal judgment, and a personal judgment rendered against unknown heirs for a specific sum of money and costs is void on its face as not in accordance with due process of law.

184 F.—55

It therefore appears that, to sustain the court below in directing a verdict, we must find that the oil company was not estopped by the sheriff's deed, although it offered the same in evidence and claimed title thereunder from showing a valid judgment and execution under which the sheriff had power to and did sell; and, further, that the evidence establishing such other judgment and execution was undisputed and conclusive.

As a general proposition based on reason and authority, a claimant under a deed is estopped from denying the material recitals contained in such deed, and recitals of the power to convey asserted by the grantor are material. Bigelow on Estoppel (4th Ed.) 354; French v. Edwards, supra; Den v. Morse, 12 N. J. Law, 331; Jackson v. Roberts, Ex'rs, 11 Wend. (N. Y.) 422; Eustis v. City of Henrietta, 91 Tex. 325, 43 S. W. 259.

The rule in Texas, however, as declared in Howard v. North, 5 Tex. 290, 311, 51 Am. Dec. 769 (apparently followed and not since questioned), is different, and to the effect that the misrecital of the judgment in the sheriff's deed is not material, if it in fact appear that the sale was under a subsisting judgment and execution, the main reason given being that a recital of the judgment and execution in a sheriff's deed is not prescribed by the statutes of the state.

Howard v. North controls as to the law of Texas and in the present case; but the question remains as to the sufficiency and conclusiveness of the evidence offered to show a valid judgment and execution to support the sheriff's deed. This evidence has been substantially given in the statement herein, and consists of the recitals in the sheriff's deed which to establish fact are admissible, although not conclusive, the testimony of Col. Work, an appointed attorney by the court to represent the unknown Brown heirs, and of Mr. N. C. Cravens, also an appointed attorney, and some documentary evidence, and need not be recapitulated nor analyzed. An inspection of it shows that while it may have tended to prove a valid judgment and execution under which the sheriff's sale of the lands of the unknown heirs of George Brown to John Work, September 4, 1878, could have been made, it does not conclusively, as a matter of law, prove such judgment and execution; and, further, that, from the interest of the witnesses, the long time elapsing, and the indefinite, confused, and conflicting nature of the evidence itself, taken as a whole, the facts involved were for the jury, and not for the court, to determine.

As this conclusion leads to a reversal and new trial, it is proper to consider the contention that the statute of Texas, approved November 9, 1866 (5 Gammell's Laws of Texas, 125), warranted a judgment and execution thereunder in the case of McKinney et al. v. Unknown Heirs of George Brown, theretofore pending in the district court of Hardin county, Tex., which would support the sheriff's sale and deed of the land in controversy.

This act should be construed to warrant in a proper case a judgment affecting the ownership and title of the land in controversy, with costs as in other cases (for which see Paschal's Dig. art. 1483), and that, in such cases, the court had power to allow the attorney appointed to

represent the absent owners a reasonable compensation, and enter judgment therefor; the amount thereof to be taxed as the costs.

For such judgment the statute gives a lien on the lands in controversy. As a statutory lien for the foreclosure of which no special proceedings are provided by law, it would seem that, if the costs are not paid nor collected in due course, the lien may be foreclosed by suit, and, on due notice to the owners, the land affected ordered sold to pay the lien. At the same time, we are clear that the said statute does not warrant a personal judgment against absent parties for money or costs, nor such a foreclosing of the statutory lien which only comes into existence on rendition of the judgment as would permit the sale of the absent owners' property without giving said owners some notice and opportunity to protect themselves.

A lien confers no power of sale without judicial process (Ency. Pl. & Pr. vol. 13, 123), and it is elementary that judicial proceedings involve notice. The foreclosure of a lien is either a statutory or an equitable proceeding. See Mr. Justice Brewer's opinion in Howe Machine Co. v. Miner, 28 Kan. 441. If a proceeding at law or in equity, the owner of the property to be affected must have notice either actual or constructive.

In Dunlap v. Southerlin, 63 Tex. 42, the court said:

"A judgment rendered against a person not before the court would be void, and it is not perceived that a judgment against a defendant in court at the suit of named plaintiffs, upon a cause of action accruing to them alone, in favor of a person in no manner a party to the action, can stand upon any higher ground. Courts have no more power, until their action is called into exercise by some kind of pleading, to render a judgment in favor of any person than they have to render judgment against a person until he has been brought within the jurisdiction of the court in some method recognized by law as sufficient; and it never will be presumed, in the face of a record which shows that certain named plaintiffs were seeking and entitled to a judgment, that the court rendered a judgment in favor of some person not shown to be before it seeking relief."

See, also, Stephenson v. Bassett, 51 Tex. 544, 545, in which the court said:

"Possibly no injustice in fact may have been done the defendant, but, under the rules of pleading and practice, we cannot sanction such a departure from long-established principles of legal procedure, as to authorize a judgment upon a case not made by the pleadings, and as to which the defendant has not had his day in court."

That notice by publication of a suit claiming title to land can be taken to be also notice of a proceeding to foreclose a possible lien not then existing nor coming into existence until after judgment rendered ought not to be held. Such notice calls the absent owner to defend his property against an adverse claimant of title, and not against the possible incidental and subsequent demands of other persons. To hold that the statute in question authorized, on publication, the rendition of a judgment which shall be a lien on property of the absent owner within the jurisdiction of the court is correct; but therefrom it does not follow that such lien may be eo instanti and without further notice foreclosed, and the absent owner's property sold.

Such proceeding would be tantamount to the rendition of a personal judgment without service.

An absent owner would have little protection for his landed property if, upon a notice in a local newspaper, he stands to lose his land, not only to an adverse claimant, but, failing that, to satisfy the demands of an attorney appointed to represent him. Such "due process of law" would be a farce, encouraging fraud, particularly if, as in this case, the appointed attorney should think that the absent owner was "mythical."

We find nothing in Taliaferro v. Butler, 77 Tex. 578, 14 S. W. 191, nor in other cases cited inconsistent with these views.

The judgment of the circuit court is reversed, and the cause is remanded, with instructions to award a new trial.