J. B. TUCKER ET AL. V. L. D. MURPHY ET AL.

(Case No. 5378.)

1. LOCATION OF CERTIFICATES—ACT OF DECEMBER 21, 1853, CONSTRUED—RELOCATION— The nineteenth section of the act of December 21, 1853, expressly excluded from the operation of that act locations made prior to December 21, 1853, upon the reservation set apart. The second section of the act of February 10, 1852, had reference to locations and surveys made both before and after the passage of that act.

2. SAME—This law, giving the right to relocate, was in force at the time the act making the reservation was passed, and the right was one growing out of a location and survey which the act making the reservation declared should not be affected by it.

3. SAME—A survey, the field notes of which were not returned to the general land

office within twelve months, made upon the reservation prior to December 21,. 1853, gave the right to relocate the same land, and this right could be defeated only by a location of the same land by some other person under a genuine land claim. It was a " right  *  *  *  * heretofore acquired in the district of country reserved."

4. EXECUTION OF DEED BY ADMINISTRATOR, ETC.—PROOF OF AUTHORITY—LAPSE OF TIME —Ordinarily, after the lapse of thirty years, the power of a person who assumes to have executed a deed under power from another, or in a fiduciary capacity,. will be presumed. This, however, is but a presumption of fact, which is indulged upon the idea that time has made it impracticable to make such proof of the actual existence of the power, as may be made in regard to matters recently transpiring.

5. SAME—Whether such a presumption will, or may be indulged in a given case,. must depend on the facts presented. If the facts preclude the idea that there still exists means, other than such as the deed itself and the acts of the parties afford, whereby to prove actual existence of the power, the power will often be presumed.

6. SAME—If the deed is shown by itself to have been executed under a power, but under such circumstances that the primary proof of the existence of the power must be presumed to exist, the failure to produce such primary proof, or to show that it cannot be produced, would seem to require the holding that the evidence of the existence of the power, which arises from the ancient character of the instrument and the action of those interested in it, is not sufficient proof.

7. SAME—EVIDENCE—See opinion for facts held sufficient to support the finding of the court below that the evidence offered was insufficient to prove that the person who made a deed was empowered to make it.

APPEAL from Parker. Tried below before the Hon. R. E. Beckham. The opinion states the case.

*J. N. Roach* and *M. D. Priest,* for appellants, as to the power to execute ancient instruments being presumed, cited: 20 Tex., 430; 41 Tex., 428; 50 Tex., 531; 28 Tex., 649; 1 Greel. on Ev., secs. 557, 570.

On relocation, they cited : 28 Tex., 429, 452; 25 Tex., Sup., 409; 22 Tex., 86.

*L. D. Murphy,* for appellees.

STAYTON, ASSOCIATE JUSTICE.—The plaintiffs sue for nine hundred and sixty acres of land, patented on February 2, 1858, to the heirs of Jacob Aaron. This patent issued under a survey made on July 9, 1856, and by a relocation, of date April 16, 1857.

Some of the defendants claim six hundred and forty acres of land patented to the heirs of P. H. Anderson, of date June 15, 1860. This patent issued upon a survey made November 29, 1853, and a relocation of the same certificate on the same land made January 27, 1855. It is admitted that the patent to the heirs of Aaron embraces the land

patented to the heirs of Anderson, and it appears that both tracts were situated within the Mississippi and Pacific reservation. The act making that reservation was of date December 21, 1853, and the land so reserved was not again subjected to location until January 1, 1857.

The nineteenth section of the act creating the reservation declared that "this act shall not be so construed as to affect any right of location or entry, pre-emption right or survey heretofore acquired in the district of country reserved and set apart for the use of said road."

It is evident that those who claim through the patent to the heirs of Aaron have no interest in the land which can prevail against any person claiming through a right which had its inception prior to December 21, 1853; for the patent to them is without any validity whatever, except through the relocation made after January 1, 1857. The original location under which the patent to the heirs of Anderson issued, was made prior to the act making the reservation in favor of the Mississippi and Pacific railroad, and was expressly excluded from its operation by the nineteenth section of the act which we have above quoted. The field notes of the survey, however, were not returned to the general land office within twelve months after the survey was made, as was required by the fifth section of the act of February 10, 1852. P. D., 4556.

The question then arises whether the relocation made January 27, 1855, was authorized, the act creating the reservation being then in force. The act creating the reservation declared that it should "not affect any *right of location* or entry, pre-emption right or survey *heretofore acquired* in the district of country reserved and set apart." Under the laws in force, had such persons as had made surveys on the land, reserved by the act of December 21, 1853, acquired a right to have the land so surveyed, even though they may not have returned the field notes to the general land office within twelve months after the survey was made, if they subsequently re-located the same land under the same evidence of right to land while the reservation continued?

The second section of the act of February 10, 1852, provided that "any person holding a genuine certificate, or other legal evidence of right to land, under the republic or state of Texas, and having a survey made by virtue of the same, the field notes of which may not have been returned to the general land office before the period prescribed by this act, shall have the right to relocate the same certificate, or other evidence of legal right to land, upon the same survey, but without being compelled to have the same resurveyed; provided, said survey shall not have been previously located by some other person by right of a genuine land claim." P. D., 4563.

It is evident that this section of the act had reference to locations and surveys made before the passage of that act, and also to surveys to be made after its passage. If a survey had been made before the passage of the act, but not returned to the general land office by August 31, 1853, then the right to relocate the same land under the same certificate or other evidence of legal right to land, was secured to the person who had made the survey which ceased to be valid because not returned to the land office within the time prescribed by law. If a survey was made after the passage of that act, but the field notes were not returned within twelve months after the survey was made, then the right in the same manner to relocate the land was secured to the person who had caused the forfeited survey to be made.

These rights were given until some other person should acquire a right to the land by locating it by right of a genuine land claim, as were they given against every person other than such a locator. The law was in force which gave such rights at the time the act making the reservation was enacted, and this right was one growing out of a location and survey which the act making the reservation declared should not be affected by it. At the time the survey, under which the heirs of Patterson ultimately received a patent, was made, the right to relocate the same land was acquired, and its exercise could not be defeated otherwise than by the location of the same land by some other person by right of a genuine land claim. As against such a right the act making the reservation was expressly made inoperative. In view of that act it was a "right heretofore acquired in the district of country reserved."

These conclusions lead to the holding that those who hold under the patent to the heirs of Patterson, have the superior, equitable and legal title to the six hundred and forty acres of land covered by it. The court below, however, held that the plaintiffs were not entitled to recover any part of the nine hundred and sixty acres covered by the patent to the heirs of Aaron. This holding was upon the ground that they had not shown that title to the certificate, under which the patent issued, had ever passed from him or his heirs to those under whom the plaintiffs claim. No link in the chain of transfer through which the plaintiffs claim is questioned, except that which purports to be a deed from a person who claimed to be the administrator of the estate of Aaron.

That deed was made on May 29, 1854, by Thomas N. Aaron, who recited in it that he was the administrator of the estate of Jacob Aaron, the original grantee of the certificate, that he had applied to the probate court for Goliad county for an order to sell the certificate, that on

April 24, 1854, that court made an order to sell it, that after having given due notice of the sale, a sale was made of the certificate on May 4, 1854, at the door of the court house of the proper county, at which the person, through whom the plaintiffs claim, bought, that the sale was reported to the proper court, and confirmed by a decree entered of record, that the purchase money was paid, and in consequence of these things the deed, which was in all respects regular, was made.

There was no proof that administration on the estate of Jacob Aaron was ever granted, that the probate court had ordered or confirmed the sale of the certificate, nor that any steps were taken in the probate court in reference to the sale.    There was no question made as to the due execution of the deed by Thomas N. Aaron.

It further was shown that the deed was recorded in Parker county in the year 1858, and that it was subsequently recorded in that county after the former record was destroyed; that the land was located and patent procured by those who claimed through the deed; that they had paid the taxes on the land and asserted title thereto, and that they had continuously held possession of the title papers.    There was no effort made to produce a transcript from the record of the proceedings of the probate court for Goliad county, which the deed recited, nor was it in any way shown that such a transcript could not have been procured.

So standing the evidence, the court below held that the evidence was insufficient to show that the person who made the deed as administrator had power to make the sale.    It is true that, ordinarily, after the lapse of thirty years the power of a person who assumes to have executed a deed under power from another, or in a fiduciary capacity will be presumed. This, however, is but a presumption of fact, which is indulged upon the idea that time has made it impracticable to make such proof of the actual existence of the power, as may be made in regard to matters recently transpiring.    Whether such a presumption will or may be indulged in a given case must depend on the facts presented.

In one case the facts in relation to a deed, purporting to have been executed under a power, may be such as to preclude the idea that there still exists means, other than such as the deed itself affords, and the acts of the parties claiming under or adversely to it long continued present, whereby to prove the actual existence of the power, and in such a case the power will be often presumed.

In another case the deed may be shown by itself to have been executed under a power, but under such circumstances that the primary proof of the existence of the power must be presumed to exist.    In

such case the failure to produce such primary proof, or to show that it cannot be produced, would seem to require the holding that the evidence of the existence of the power, which arises from the ancient character of the instrument, and the action of those interested under or adversely to it, is not sufficient proof. In the case before us the deed which it is claimed is sufficient evidence of the power of the persons who executed it to pass the title which it purports to convey, shows, if it speaks the truth, that the probate court for Goliad county granted letters of administration on the estate of Jacob Aaron, that by an order entered on its minutes, it directed the administrator of that estate to sell the land certificate in question, and that by an order subsequently entered, in a similar manner, the sale after being properly reported, was confirmed.

These several orders the law required to be placed on the minutes of the court, that, in an enduring form, the evidence of the power of the administrator to make the deed might be preserved, and we are of the opinion that the failure of the plaintiffs to produce a properly certified transcript of such orders, or to show to the court some sufficient reason why this was not done, were facts justifying the court in refusing to presume facts which, if they existed, in the absence of proof to the contrary, must be presumed to be capable of proof by the very evidence which the law requires to be preserved as the evidence of their existence.

It would be useless to speculate as to what evidence would be sufficient to authorize the presumption that the administrator had lawful power to do what he assumed to do by the deed which he made, if it were shown that the records of the probate court had been destroyed or otherwise rendered inaccessible. As the cause was presented, the court below found that the evidence offered was insufficient to prove that the person who made the deed was empowered to make it, and we are not prepared to hold that his finding was not correct.

If every assignment of error relating to the admission and rejection of evidence were sustained, it could not change the result of this appeal; for the evidence did not bear upon the two controlling questions in the case which we have considered. There is no error in the judgment and it must be affirmed. It is so ordered.

AFFIRMED.

[Opinion delivered June 1, 1886.]