### FOSTER et ux. v. PERSINGER.

No. 2430.

Court of Civil Appeals of Texas. El Paso. June 26, 1930.

Rehearing Denied July 24, 1930.

Paul Moss, of Odessa, for appellants.

Jno. L. Fowler, of Odessa, for appellee.

PELPHREY, C. J.

This is an appeal from a judgment in trespass to try title suit brought by appellee against appellants to 5 acres of land in the northwest quarter of the northwest quarter of section 33, Texas & Pacific Railway Company survey in Ector county, Tex. Appellants pleaded not guilty and the five and ten year statutes of limitations.

The trial court filed findings of fact and conclusions of law which will here be quoted as showing the facts:

### "Findings of Fact.

"The plaintiff derived her title by a special warranty deed from John Hoge, Trustee of the Texas & Pacific Ry. Co., said deed being dated January 20, 1887, and recorded in Volume 3, pages 57 and 58 of the deed records of Ector County, Texas, on the 20th day of January, 1887, at 10:30 o'clock A. M. I find that the legal title from the sovereignty of the soil to the said plaintiff is regular and unbroken and that the said plaintiff, Lovenia S. Persinger, had a good, valid and existing title to said land in this suit on said date of January 20, 1887. I further find that the plaintiff has never lived on said land and has never used it from said date. I further find that the plaintiff attempted to pay the taxes on said land when she first bought it, but never attempted to pay them up to about the year 1927. I further find that the defendant, H. C. Foster, obtained title to 542½ acres out of Section 33, Block 42, Tsp. 2-South, Texas & Pacific Ry., Co. Survey situated in Ector County, Texas, of which the land in controversy is a part and I further find that the defendant obtained his title by a general warranty deed from J. L. Martin on the ——— day of November, 1907. I further find that the title of the said defendant is regular and complete from the sovereignty of the soil to defendants up to date of defendant's deed on the ——— day of November, 1907, save and except the land in controversy.

"I further find that when defendant purchased said 542½ acres from said Martin he had an abstract made and the abstract of title prepared by an abstractor in Ector County failed to place in the abstract the deed of plaintiffs, which was then on record and I further find that the defendants thought they were acquiring full title to all of the 542½

acres purchased from Martin on said date in November, 1907. I further find that the defendants have cultivated part of said land in controversy and have used all of it for grazing purposes and have had same enclosed in the 542½ acres, which has been under fence from said date of November ——, 1907 up to about 1927.

"I further find that the defendants have been using and enjoying said land as their own, thinking they owned same, and that said defendants have even sold part of the land in controversy to other parties.

"I further find that the plaintiff, by her daughter, came to Odessa about 1927, and inquired of the County Officials where her land was situated and that she had the County surveyor to go out and survey the land in controversy. I further find that plaintiff, by her daughter, approached the defendant about the land in controversy and that the defendants told her that there must be some mistake and that if she had a valid title on record prior to the date he purchased the land from Martin that he didn't want the land, and that he didn't want something for nothing and that he would look into it and do the right thing about it. I further find that defendants have done nothing toward straightening it out up to the time suit was filed in this case."

#### "Conclusions of Law.

"Though the defendants had possession of the land in controversy since 1907 and were using and enjoying same, as they had no actual knowledge of plaintiff's title until 1927 and when apprised of plaintiff's assertion to ownership the defendants did not assert their claim to the title to the property as against the plaintiff and as no hostile assertion of ownership of title by the defendants as against the plaintiff's title was made by the defendant until this suit was instituted, the defendants have failed to establish their title to the land in controversy by the statutes of limitation. As the defendants have not established their title by limitation and as the plaintiff had a valid deed duly recorded, and which deed connected the plaintiff with the title regular from the sovereignty of the soil to the time the defendants obtained their deed connecting them with the title regular from the sovereignty of the soil, with the exception of plaintiff's outstanding deed of record, the plaintiff is entitled to recover the title and possession of the land sued upon in this suit."

The documentary evidence shows that the land in dispute was patented to the Texas & Pacific Railway Company May 10, 1883; that the railway company deeded it to John Hoge, but not as trustee, on February 17, 1886; that on December 18, 1886, John Hoge, trustee, deeded it to appellee; that on March 4, 1903, John Hoge, by warranty deed conveyed it to T. J. Martin, H. M. Pegues, and W. N. Waddell; that Martin, Pegues, and Waddell, on September 8, 1907, conveyed to J. L. Martin, who conveyed to H. C. Foster, appellant, September 11, 1907.

Appellants contend that the undisputed evidence and the findings of fact by the court show that they have had peaceable and adverse possession of the land in question, cultivating, using, and enjoying the same for more than ten years after appellee's cause of action accrued.

H. C. Foster, one of the appellants, testified: "I have lived in Ector County since November, 1907. I have lived in the house where I am now living since November, 1907. I am familiar with the deed from J. L. Martin and wife, Elizabeth, to H. C. Foster, dated September 11, 1907. I bought the land described in that deed and had the deed recorded. I thought it was mine plum on until this lady came. Yes, I paid the taxes on it from the time I bought it on. The land was fenced when I received it from Martin and it continued so until this boom and sold along the highway a strip an acre wide, but there was a fence along that part of it until two months ago. During this time I have used this property continuously. I cultivated it some and also used it for grazing. Since I bought it from Martin I have claimed it under the deed I got from Martin; I thought it was mine. I have been in possession of it. No suit has been brought to dispose (dispossess) me until this suit was brought and nobody disturbed my possession until this lady came up about two or three years ago. I live on part of this same tract of land and have lived on it since I bought it from Martin. I took it under this deed, claimed it under the deed and have been in possession of it from that time until now."

J. B. Foster testified: "I am a son of H. C. Foster, I am familiar with the tract of land involved in this law suit. I lived with my father two or three years after he first went there, but since then I have lived at the ranch part of the time, and have been away some. I have been familiar with the place, however. He has used and enjoyed it during all these years. He used it—he farmed one portion and kept the rest for grazing purposes. It was more valuable for grazing purposes than anything else. As to it being enclosed all the time; it has been enclosed ever since he bought it until a month or so ago. During all that time he has claimed it and asserted ownership over it. He used the land for grazing purposes, yes, that part in the field. He farmed it off and on the last few years. He had the entire section fenced and just used it for grazing. Yes, he had it fenced. I don't know if the 469½ acres is what he had fenced under his part from Martin. Yes, the amount under this deed is what he had fenced."

Mrs. Flora L. Pendleton, the daughter of appellee, on December 13, 1929, testified: "I am acquainted with the five acre tract in controversy; I have been carrying on negotiations with the defendant, Mr. Foster, with reference to this land for my mother. I came out here three years ago, or a little over three years ago, to locate the land. That was the first time I knew that Mr. Foster was claiming it. He first told me that the land was not in his pasture, but I had Mr. Allen Smith to survey the land and I found that the five acre tract was in Mr. Foster's pasture. Mr. Foster said he would do whatever was right about it and he made the statement in Mr. Moss' presence that he didn't want anything by limitation and that if my deed was a bona fide deed, was all right, he would not do anything about it. * * * This five acre tract is located on the Bankhead Highway, west of Odessa, Texas, on the south side of the highway. It is not close to Mr. Foster's house, but in the south part. I paid the taxes on the property last year. The amount was $3.25, which I paid to the sheriff of Ector County, Texas. * * * At the time I saw Mr. Foster, he did not claim to me that the land was his; he said when he bought the land there was some misunderstanding about five acres, but he didn't know what it was, and that the people from whom he bought the land told him to take it; however, he told me that if my mother's deed was a bona fide deed, he would straighten it out. I had a certified copy of the deed made and took it to him to his residence and showed it to him; he said he did not want the land and didn't claim it and that he would straighten it out some way."

■ In order to acquire title by limitation under the ten-year statute (Rev. St. 1925, art. 5510), a claimant must prove by a preponderance of the evidence (1) possession of the land, (2) cultivation, use, or enjoyment thereof, and (3) an adverse or hostile claim thereto.

The court found that appellant Foster, when he bought the 542½-acre tract from Martin, had an abstract made, and that the abstractor failed to include the deed for the 5 acres to appellee; that appellants had cultivated part of the land in controversy and used all of it for grazing purposes, and had it enclosed since November, 1907, until 1927; and that they had been using and enjoying same as their own.

The evidence appears to be sufficient to support these findings; therefore it follows that the first two requirements have been established, and the only question then left for determination is whether the claim of appellants was adverse and hostile.

The court in his conclusions of law uses this language: "Though the defendants had possession of the land in controversy since 1907 and were using and enjoying same, as they had no actual knowledge of plaintiff's title until 1927, and when apprised of plaintiff's assertion of ownership the defendants did not assert their claim to the title to the property as against the plaintiff and as no hostile assertion of ownership of title by the defendants as against the plaintiff's title was made by the defendant until this suit was instituted, the defendants have failed to establish their title to the land in controversy by the statutes of limitations."

From the above it appears that the trial court was of the opinion that appellants' failure to assert their title to the property twenty years after its purchase was sufficient to show that the holding by them had not been adverse to the claim of appellee.

As we view the facts here they abundantly establish that appellants entered upon and took possession of the land, and have used and enjoyed it for the full period of ten years before even any claim was ever advanced by any one that the property did not belong to them. Their possession was certainly an actual and visible appropriation of the land commenced and continued under a claim of right wholly inconsistent with the claim of appellee. They had a deed which included the disputed tract, they had the whole tract fenced, cultivated a part, and used all of it for grazing purposes, had their deed duly recorded, and paid the taxes before they became delinquent.

The legal effect of the existence of these facts cannot be destroyed or impaired by the mere declaration of appellant, after the right attached by virtue of the law, that there must be some mistake about it, and that, if appellee had a valid title on record prior to the date he purchased the land, he did not want the land, and that he did not want something for nothing, and that he would look into it and do the right thing about it.

The court found that appellants thought they were acquiring full title to all of the 542½ acres when they bought it from Martin; that they used and enjoyed it, thinking they owned it; and that they had no knowledge of the claim of appellee until 1927, twenty years after they acquired it.

How can it be said that appellants, during the time between 1907 and 1927, were not holding this property adversely, not only to appellee, but to all the world?

If the statements charged to appellant had been such as to show that the facts did not exist which would create this title under the statute, we would have a different question; but the court itself has by the findings above quoted shown that the statements could not have that effect.

[2] "Limitation title, like other sorts of title, cannot be defeated by a mere gratuitous acknowledgment that takes place subsequent

to its acquisition. 2 Tex. Jur. p. 140; Franklin v. Smith (Tex. Civ. App.) 265 S. W. 715, 717." See, also, Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104, for a case quite similar to the present one.

 Believing that the trial court erred in rendering judgment for appellee and being of the opinion that the evidence and findings of fact establish title by limitation in appellants, the judgment of the trial court is reversed, and judgment here rendered that appellee take nothing by her suit.

HIGGINS, J., did not sit in this case.