**JOBE et al. v. OSBORNE et al.**

No. 4421.

Court of Civil Appeals of Texas. Texarkana.

Dec. 15, 1933.

Rehearing Denied Jan. 4, 1934.

Thompson, Mitchell, Thompson & Young and P. G. McElwee, all of St. Louis, Mo., and J. C. Farmer, of Tulsa, Okl., for appellants.

Karl A. Crowley and Crowley & Tarlton, all of Fort Worth, and Wynne & Wynne, of Longview, for appellees.

LEVY, Justice (after stating the case as above).

There is presented the points in view, based on the several assignments of error appearing in the appellants' brief, in effect, that the evidence established: (1) The land in suit was not within the original line, but without the boundaries of the plaintiffs' tract; (2) the peaceable and adverse possession of the land by the defendants in compliance with the requirements of the statute; (3) the plaintiffs failed to show title to the land sued for. The defendants requested a peremptory instruction to the jury to return a verdict in favor of the defendants, and the court denied the request and submitted to the jury the two issues: First, a question of boundary; second, a question of defendants' adverse possession. The case appears to have been tried upon the theory and in the view that the controversy made is necessary (1) to settle and establish the true west line of

the P. W. Warraner survey in order to determine whether the land in suit was located without the boundaries in the deeds under which plaintiffs claim, and within the boundaries in the deeds under which the defendants claim; and (2) to ascertain the intention and character of holding of the land in suit by Humphrey Lockhart and the defendants claiming under him, and to give effect thereto. Appellants state in their brief: "There were three main issues before the court: First, a question of boundary; second, a question of the defendants' adverse possession; third, the title proved by the plaintiffs."

It is believed in the light of the evidence the court did not err in refusing to give a peremptory instruction to the jury. As to the first point, the issue of disputed boundary arose as where the boundary line between two adjoining landowners is uncertain. It would serve no purpose to set out the evidence in respect thereto. What are boundaries and what matters may be considered in determining their location are, as generally held, matters of pure law to be decided by the court. Bolton v. Lann, 16 Tex. 96; Farley v. Deslonde, 58 Tex. 588; Robinson v. Douthit, 64 Tex. 101. Generally, in a boundary case, a verdict may be instructed when the facts are not in dispute, but, where there is a conflict in the testimony as to the location of a boundary line, it is error to give a peremptory instruction. It is the claim, in effect, of appellants, that the theory of the case as presented by them is supported by specific and definite facts, while the evidence in behalf of appellees is merely general and indefinite, and therefore the only question involved is the correct application to the facts of well-known principles of law. We are unable to reach the conclusion, carefully considering the evidence as a whole, that the weight of the evidence in favor of another line than found by the jury is so great as to make any other view unreasonable. As to the second point, we likewise think that it may not be held that the evidence as a whole clearly and conclusively shows an adverse holding against plaintiffs for a length of time sufficient for the statute of limitation to be made available. An adverse or hostile claim is essential to the maturing of title. Parol testimony may be sufficient for the purpose of showing that the possession has not been adverse. There is some evidence, however slight it may be considered, going to show that Humphrey Lockhart recognized and did not deny the claim of the plaintiffs of the title and right of possession of the land. Quoting from the case of Hartman v. Huntington, 11 Tex. Civ. App. 130, 32 S. W. 562, 563: "The question whether or not a possession is adverse to the owner of the land is mainly one of fact. If a particular holding is adverse in law, it is so because it is adverse in fact, and all that is necessary in order to reach a correct decision of such a question is to give to the facts in evidence their proper effect, and to determine just what they prove."

As to the point that the plaintiffs failed to show title to the land in suit, it is insisted, first, that there is no relationship shown between W. H. Leach, the grantor in the deed from S. Slade Barnett, executor, and Martha Ann Leach, the testator in the will. The will recites that Martha Ann Leach is a "widow," and shows by its terms a devise to plaintiffs of "340 acres of the P. W. Warraner Headright Survey." It was shown by deed from Sarah Stonehouse a conveyance to W. H. Leach of "350 acres of land, more or less," described by metes and bounds, out of the P. W. Warraner survey. The evidence of Mrs. Mary Patton Beall, who was proven to be the granddaughter of Mrs. Martha Ann Leach, goes to show that part of "this 340 acres of land," which the will of Mrs. Leach devised to the plaintiffs, "remained a part of the W. H. Leach estate," and that from her "earliest recollection" she knew that "my grandfather," referring to W. H. Leach, "attended to the handling and planting of the crops" on the land. Her testimony in that respect appears:

"Q. Are you familiar with the will of Martha Ann Leach? A. Yes, sir.

"Q. Do you know what (where) this 340 acres of land in that will is—what became of it? A. Part of it was sold.

"Q. What became of the rest of it? A. It remained a part of the W. H. Leach estate, because it was not included in the partition of the estate after my grandmother's death.

"Q. Then you have known this land in the neighborhood of all of your life? A. My earliest recollection is when my grandfather used to go out to attend to the planting and the handling of the crops."

These circumstances are such as to reasonably create the presumption that they describe the grandmother, Mrs. Martha Ann Leach, as the widow of "my grandfather," W. H. Leach. There arises the fact of a marriage, identity of name, and the devising as a "widow," the very 340 acres of the P. W. Warraner survey deeded to W. H. Leach. As next friend, the executor's deed alone cannot

be taken as competent evidence as against appellants of the recitals therein, and, since the purported will or the order of the probate court admitting it to probate was not offered, the plaintiffs failed to prove any title from J. R. Oliver to W. H. Leach. That there is the lack of the existence of the power to execute the deed. The plaintiffs claim the deed was admissible without the documentary evidence mentioned under the general rule applicable to an ancient deed. The deed was introduced in evidence, and seemingly with no objection made thereto, from "S. Slade Barnett, Executor of the Estate of J. R. Oliver, deceased," to W. H. Leach, conveying by metes and bounds 30 acres of land out of the P. W. Warraner survey. Immediately following the particular description in the deed, and as in the nature of a description and the identity of the land, appears the clause, "Being a part of the land owned by J. R. Oliver at his death, and bequeathed by him to Lillie Beall and her daughter Emily in his last will and testament." Then follows recitals, reading: "In which will the S. Slade Barnett is made executor of the estate with full power to senta (settle) up said estate at his own discretion and without reference to the court of the County, and with authority to sell all or any part of his property to discharge the debts of the said testator, and this sale is made in pursuance of that object and to meet the indebtedness of said deceased."

About sixty years had passed since the date of the deed, of February 10, 1872, and the date of its registration on February 16, 1872. The signing of the deed by S. Slade Barnett as "Executor of the Estate of J. R. Oliver, deceased," is enough to characterize the deed as made by Mr. Barnett as the official representative of the estate. Generally, the appropriate proof of the official character and authority of an executor, as truly as an administrator, is the production of the orders of the probate court. Terrell v. Martin, 64 Tex. 121; Tucker v. Murphy, 66 Tex. 359, 1 S. W. 76; Bartley v. Harris, 70 Tex. 181, 7 S. W. 797; Riley v. Pool, 5 Tex. Civ. App. 346, 24 S. W. 85; and other cases. There the authority and the power of the executor and administrator emanate from a court of record, and such records are in the custody of officials charged with their preservation and safe-keeping and so that the evidence is perpetuated and accessible to all persons. There appears, however, an important qualification to the above rule, as respects the admitting in evidence of a deed thirty years old or more of an independent executor containing recitals of the existence of facts which authorized its execution. A deed by an independent executor is considered and placed in the same class as a deed purporting to be executed by a person or a trustee acting under a power of attorney. Sydnor v. Texas Savings & Real Estate Inv. Ass'n, 42 Tex. Civ. App. 138, 94 S. W. 451, 453 (writ of error denied); Schramm v. Hoch (Tex. Civ. App.) 241 S. W. 1087, 1089. Quoting from the Hoch Case, supra: "An independent executrix in a sense becomes the agent of the testator, and not only has the power to carry out his contracts, but it is made the duty so to do. * * * An independent executrix may do what the testator could have done in his lifetime, or what a probate court may do in the course of administration (citing cases), or do what at common law he could have done."

Quoting from the case of Sydnor, supra: "The recitals in the executor's deed of the existence of the facts which authorized its execution are the equivalent of the recitals, in a deed purporting to have been executed under a power of attorney, of the existence of the power, and, in the one case as well as the other, such recitals, if the deed is an ancient instrument, are admissible to establish the existence of the facts recited."

The executor in the instant appeal must be considered as an independent executor for the recited fact is that he is given full power to act "without reference to the court of the County." In 1872, when the deed was executed, the law of Texas provided for independent executors. Articles 5626 and 5628, "Administration," Paschal's Digest, read:

"Article 5626. A testator may direct by his will that no action be had in the District Court in the administration of his estate except to prove and record the will and return an inventory and appraisement. He may direct that the person named as executor shall not be required to give bond."

"Article 5628. When a will contains directions that no action be had in the District Court in the administration of the estate * * * the same shall become like any other property to be administered under a power, chargeable in the hands of a trustee, and liable to execution in any court having jurisdiction."

In the case of Stone v. Dorsett, 18 Tex. 700, in the view of the statute, it was stated: "It must be recollected that Stone does not derive his authority to administer the estate or act as guardian for the minors, solely from the grant of power by the County Court.

He derives his authority, both as executor and as guardian, from the will of the deceased." There the executor named proceeded to carry out some of the terms of the will before he qualified and gave bond, and the court said: "Certainly the sale was no ground on which letters testamentary could have been refused, and especially when it is considered that, where a sale is directed by will, no order from the County Court is necessary, to make such sale." And in the case of Langley v. Harris, 23 Tex. 569, in view of the statute mentioned: "The section of the statute which gives the testator the right to insert such a provision in his will (that the probate court shall exercise no control over the estate), contemplates that the executor named will accept the trust confided to him. It is a special trust, which cannot be transferred to another by the trustee, nor delegated to another by the county court. It confides in the discretion and integrity of a particular person; and if that person should fail to accept, and exercise the trust, it is at an end; and, as in any other case, where there is a will, without an executor, the county court must appoint an administrator, with the will annexed."

It is therefore thought the rule dealing with ancient documents could properly be made applicable to the present deed. The doctrine of estoppel by recitals in an anterior deed (1 Greenleaf on Evid. [16th Ed.] § 23, p. 118), which is a different rule, is not here sought to be applied against appellants. The deed purports to have been executed under the authority, as recited on the face of the instrument, that a will was executed by J. R. Oliver providing no action be taken by the probate court, and the conveyance was made in pursuance of its terms. The deed being the act of an independent executor, antiquity of the transaction and the legal effect of the recitals would furnish the reason for invoking the rule usually allowable of presumptive evidence that the deed has been duly executed under authority to do so. ▉▉▉ The points are specially presented that (1) the husband of Mrs. Carrie Wallace, deceased, and the heirs of the husband of Mrs. Belle Buffum, deceased, are not parties to the suit, and (2) one of the deeds under which plaintiffs claim conveyed by its terms only a one-half interest therein. The deed from P. W. Warraner to James R. Oliver conveyed a tract specially described by metes and bounds, and following the description is the clause, "The above-described tract of land is the undivided half of 320 acres of

Phannell W. Warraner Headright." The record goes to show that of the 640 acres in the P. W. Warraner Headright survey one tract of 120 acres was sold off the west side in 1850, and another tract of 200 acres was sold. Thus there was left remaining and undivided the other half of 320 acres which reasonably appears to be the land specially described in the deed mentioned. It may not fairly be inferred from the circumstances that W. H. Leach did not become the full owner of the tract in controversy. The first point must be determined in the view that co-tenants, regardless of their respective titles or estates, may maintain an action of trespass to try title (11 Tex. Jur. § 57, p. 500); that, in accordance with the rule, a tenant in common may maintain an action of trespass to try title, not only against one without claim, but also against one who claims title. Lone Star Gas Co. v. Meyer et al. (Tex. Civ. App.) 296 S. W. 1110; Hall v. Haywood, 77 Tex. 4, 13 S. W. 612. It is stated in the Hall Case, supra: "We are of opinion that, without reference to the deed executed by the two executors, Mrs. Haywood shows such interest as entitled her to recover. Under the will of her father, she was a joint tenant with the other children of her father, and therefore had such interest in the land as would enable her to maintain this action."

All the assignments of errors, besides the ones specially mentioned above, have been carefully considered, and we conclude they should be and are here overruled, as not presenting reversible error.

The judgment of the trial court is affirmed.