**Johnny WELLS et ux., Appellants,**

**v.**

**Henry HARPER et al., Appellees.**

**No. 7675.**

Court of Civil Appeals of Texas.

Texarkana.

Sept. 28, 1965.

Hollie G. McClain, Gilmer, W. D. Brown, Quitman, for appellants.

W. H. Frank Barnes, Terrell, for appellees.

FANNING, Justice.

Appellees, as plaintiffs, sued appellants and other named parties, as defendants, in trespass to try title to a 10.3 acre tract of land in Wood County, Texas, plead the 10 year statute of limitations and also sought a mandatory injunction to compel appellants Wells and wife to remove a fence Wells had constructed on the tract in controversy.

Trial was to the court with the aid of a jury. Special issues 1 and 2 and the jury's responses thereto were as follows:

"SPECIAL ISSUE NO. 1:

"Do you find from a preponderance of the evidence that the plaintiffs held peaceful and adverse possession of the entire tract of land described in Plaintiffs' First Amended Original Petition, cultivating, using or enjoying the same for a period of ten consecutive years prior to January 16, 1964, the date this suit was filed: Answer 'yes' or 'no.'

"ANSWER *Yes*

"If you have answered Special Issue No. 1 'yes', and in that event only., then you will answer Special Issue No. 2.

"SPECIAL ISSUE NO. 2:

"Was the adverse possession and claim of the plaintiffs, if any you have found in answer to Special Issue No. 1, so open and notorious and unequivocal as to put a person of ordinary care and prudence in the same situation as the defendant, and under the facts and circumstances in this case, upon notice that the plaintiffs, were claiming and asserting title to all of the tract of land described in Plaintiffs' First Amended Original Petition?   Answer 'yes' or 'no.'

ANSWER: *Yes*"

The trial court rendered judgment for plaintiffs-appellees for the title and possession of said land and ordered the removal of the fence in question within a reasonable time, not to exceed 60 days from the date of the judgment.  Appellants' amended motion for new trial was overruled and appellants Wells and wife have appealed.

Appellants present 9 points on appeal which are grouped and discussed together. By said points appellants contend to the effect that appellees went into possession of the tract in question in recognition of the owners' title, that the burden was on appellees to introduce evidence and bring home notice to the owners that their claim had changed from peaceful or permissive to hostile, that appellees failed to do so, failed to submit an issue to the jury and secure a finding that appellees brought home notice to appellants that the possession had changed from peaceful to hostile, that there was "no evidence" and "insufficient evidence" to submit the question of adverse possession to the jury, that there was "no evidence" and "insufficient evidence" to support the jury's verdict that appellees ever claimed the land adversely to appellants, and that there was "no evi-

dence" and "insufficient evidence" to show that appellees' claim changed from peaceful to hostile.

Appellees reply thereto by 9 counterpoints, grouped and discussed together, wherein they contend to the effect that appellees did not go into possession of the tract of land involved in this suit in recognition of the owners' title but went into and took possession because they had purchased the land from the owner, that the undisputed testimony shows that Henry Harper and his wife took possession of the land in question by reason of their purchase of same, and further shows that their claim to the same against all persons thereafter was sufficient to support the jury's finding of adverse possession, that appellees' possession and claim of the land in question being based upon their purchase of said land, and they having used, occupied and enjoyed the same from 1916 or 1917 to the time of the filing of the suit in 1964 (about 47 or 48 years) were sufficient notice to all persons including appellants that their claim was hostile to appellants, that the evidence authorized the submission of adverse possession to the jury, and that there was evidence of probative force, and was amply sufficient, to support the findings of the jury, and that the evidence clearly shows and was sufficient to show that appellees' claim to the land in question was hostile to all other persons.

Plaintiffs-appellees produced testimony to the effect that in 1916 or 1917, Henry Harper, a young negro man with a wife and two or three children, bought the tract of land involved in this lawsuit from G. W. Lipscomb, that pursuant to said purchase Henry and his family moved onto the land, that at the time of the purchase Lipscomb took Henry Harper to the land, showed it to him, showed him where the corners and boundary lines were, that after Henry and his family moved upon the tract of land, they made improvements consisting of adding to a small two room house on said land, building a three-wire fence on the designated lines around the land, dug a well on the

land, and making other improvements and doing other things to put the land in cultivation and livable condition, that they raised their family there including additional children who were born on said place, that Henry Harper and his wife, and children, continued to live on, use, occupy, enjoy, farm, cultivate, pasture, pay taxes on, and claim said land from the time they moved on it in 1916 or 1917 until the time of the filing of this suit in 1964, that Henry Harper's first wife died in 1959 and he re-married in 1962 at which time he moved off of the tract of land and left one of his children, one of the appellees herein, living in the house from which he had moved, that all during this time plaintiffs-appellees had possession of said 10.3 acre tract, that it was enclosed by good and substantial fences, that they made various crops on it throughout all the years and also pastured portions of same, and facts were related which would show that Henry Harper and his family had adverse possession of said land for a period of about 47 years continuous uninterrupted possession, that no question was ever raised about appellees' ownership of the land by anyone until the fall of 1963, when the appellant Johnny Wells, without the consent of appellees and over their protest went upon said land and constructed a four-strand barbed wire fence in an easterly-westerly direction across said land, cutting off approximately 4.6 acres off of the south side of the 10.3 acre tract.

Neither party showed a record title to the tract of land in question. Appellants introduced in evidence a deed, dated Oct. 29, 1940, from G. W. Lipscomb to Henry Harper, reciting a cash consideration of $20.00, and the creation of six vendor's lien notes, five for $50.00 each and the last for $30.00, payable in 1941–2–3–4–5 and 6, respectively. Appellants say that this deed describes the tract in litigation—appellees say that it does not correctly describe the land in litigation and that if it did they would introduce the deed in evidence and rely upon it themselves. Appellees' surveyor witness testified to the effect that this deed does not de-

scribe the land in controversy. It is thus appellees' position that since their deed or deeds do not correctly describe the land in litigation they must rely upon title by adverse possession. We agree with appellees that the 1940 deed in question does not correctly describe the tract in litigation here.

For a comprehensive discussion of the law applicable to the determination of "no evidence" and "insufficient evidence" points see Chief Justice Calvert's article " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Tex.Law Rev., No. 4, p. 361.

As we view the record there is no evidence of probative force to the effect that Henry Harper took possession of the land in litigation as a tenant of G. W. Lipscomb or anyone else, or that he took possession in recognition of title in anyone other than himself as the owner. There is also no testimony in the record that Henry Harper ever rented the land from Lipscomb or anyone else or that he ever paid any rents to anyone. The evidence is amply sufficient to show that Henry Harper took possession of said land in 1916 or 1917, claiming to be the owner of said land, and that he cultivated, pastured, used and enjoyed it, making improvements thereon, paying taxes thereon and claiming it as his own, adversely to the world, and that his possession was not interfered with by anyone until defendant Johnny Wells constructed a fence upon said land in 1963.

After carefully considering the record in this case it is our holding that there was ample evidence of probative force to support the jury's findings on special issues 1 and 2, to the effect that plaintiffs held peaceable and adverse possession of the tract in litigation for a period of 10 consecutive years prior to Jan. 16, 1964, the date the suit was filed, and that such possession was so open and notorious and unequivocal as to put a person of ordinary care and prudence in the same situation as the defendants, and under the facts and circumstances in the case, upon

notice that the plaintiffs were claiming and asserting title to all of the tract of land sued for by plaintiffs. In this connection see the following authorities: Mills v. Vinson, Tex.Civ.App., 342 S.W.2d 33, wr. ref., n. r. e (1960); Rae v. Baker, Tex. Civ.App., 38 S.W.2d 366, writ refused (1931); Krause v. Hardin, Tex.Civ.App., 222 S.W. 310, writ dism. (1920); Major v. Meyers, Tex.Civ.App., 111 S.W.2d 1184, no writ (1937); Chittim v. Auld, Tex. Civ.App., 219 S.W.2d .702, wr. ref., n. r. e., (1949).

We hold that the evidence was amply sufficient to support the jury's findings to special issues 1 and 2.

We further hold that there was evidence of probative force and that the same was amply sufficient to show that plaintiffs' claims to the land in controversy were adverse and hostile to all persons (including appellants) except to themselves.

█ It is our further view that the 1940 deed in question from Lipscomb to Harper, introduced in evidence by appellants, does not in any way defeat appellees' title to the tract in question. There was ample evidence of probative force to sufficiently support the view that appellees from 1916 or 1917 up to 1940, a period of 24 or 23 years, had already acquired title to the tract in litigation here by adverse possession under the 10 year statute, and since the title had already matured in appellees before 1940, the 1940 deed in question from Lipscomb to Harper (even if it correctly described the land in controversy—which we find it did not) could not divest appellees of their valid limitation title already consummated. In this connection see Republic National Bank of Dallas v. Stetson et ux., Tex.Sup. Ct., 390 S.W.2d 257 (1965) wherein it was stated in part as follows:

"A limitation title once consummated, is as full and absolute as any other per-

fect title, and it is not lost by a subsequent oral statement by the limitation owner that he never intended to claim by limitations. Jobe v. Osborne, 128 Tex. 509, 97 S.W.2d 939 (1936); Bruce v. Washington, 80 Tex. 368, 15 S.W. 1104 (1891); 2 C.J.S. Adverse Possession § 208, p. 807. A written acknowledgment of tenancy by one who has perfected title is also ineffective to divest a limitation title. The precise point was faced in Franklin v. Smith, 265 S.W. 715 (Tex.Civ.App.1924, writ ref.), the court writing:

'* * * appellant contends that since it was shown by the undisputed evidence that on the 21st day of September, 1914, appellee Smith executed an instrument whereby he acknowledged that he was a tenant of those owning the record title to the land he now claims by limitation, and since it was shown that appellee's wife had thereafter contracted with such owner to purchase a part of said land, appellee Smith is estopped from claiming title by limitation.

'We think an answer to the two propositions is: * * and, second, that it having been shown that appellee Smith had perfected his title by limitation prior to the execution of the acknowledgment of tenancy, and prior to the proposed purchase by his wife, such acknowledgment and proposed purchase would not affect the title so acquired by limitation. Such acts on the part of Smith and wife could not serve to destroy their title theretofore acquired and perfected by limitation. Limitation title, like all other sorts of titles, cannot be defeated by a mere gratuitous acknowledgment that takes place subsequent to its acquisition.' "

All of appellants' points are overruled. The judgment of the trial court is affirmed.

Affirmed.